IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LISA VELASQUEZ-OLIVAREZ, | § | |
|    *Plaintiff* | § | |
| | § | |
| *v*. | § | 3:14-CV-436-FM |
| | § | |
| GEO GROUP, INC., WARDEN RAUL | § | |
| TREVINO, WARDEN BRENT BEMENT, | § | |
| LUIS VALLADAREZ, and OFFICER | § | |
| FABIOLA CARRIZALES, in their official | § | |
| and individual capacities, | § | |
| | § | |
|    *Defendants* | § | |

**THE GEO GROUP, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**

TO THE HONORABLE FRANK MONTALVO:

COMES NOW The GEO Group, Inc. (GEO) and makes this response to Plaintiff's Motion for Sanctions (Doc. 67) and in support would show as follows:

**Plaintiff's Motion**

1.1 Plaintiff was a prisoner in the Maverick County Detention Center at the time of the events in her complaint. Her telephone calls were recorded. Plaintiff seeks sanctions against GEO and Valladarez for failing to disclose the phone recordings when Defendants made their initial disclosures on May 19, 2015. As a sanction, Plaintiff wants the Court to rule that Defendants cannot "use the recordings in any subsequent proceedings including trial" and to award fees for her attorney's time preparing for and attending her deposition. (Doc. 67, pp. 9-10)

1.2 Plaintiff argues that sanctions are appropriate because the phone calls are the entirety of GEO's defense [Doc. 67 p. 1], the recordings were disclosed 2 weeks late [Doc. 67 p. 2], the

1

disclosures did not describe documents by location[1] [Doc. 67 p. 2], the recordings should have been disclosed despite their impeachment value because they also have substantive value [Doc. 67, p. 5], and GEO had no justification for withholding the recordings but instead withheld them for strategic and intentional reasons. (Doc. 67, pp. 5-6) She argues sanctions are appropriate because disclosure of the tapes could have shortened the deposition, avoided the "ambush", prevented Plaintiff's attorneys from wasting their time, and enabled them to prepare Plaintiff for questions about the phone conversations. She also complains that GEO failed to give her copies of what it initially disclosed.[2] (Doc 68-4)

**GEO's Response**

2.1  Defendant responds that Plaintiff can show no misconduct by Defendant that sanctions would deter or correct: to the contrary, the sanctions Plaintiff seeks would perpetuate her own abuse of the judicial process by erasing devastating proof that she knowingly brought false claims in this Court. The authorities Plaintiff cites do not support her arguments. Rule 26(a)(1)(A)(ii) did not require Defendant to disclose the recordings before they were used at Plaintiff's deposition, because they were used solely for impeachment. Even if the recordings should have been disclosed under Rule 26, the 10-day delay between Defendant's initial

---

[1]  It's not clear why this Plaintiff brings this argument, since GEO's initial disclosures did not mention the recordings *at all* due to the fact that the recordings were to be used solely for impeachment. Nonetheless, since GEO was disclosing documents in its "possession, custody, or control" [*see* Fed. R. Civ. P. 26(a)(1)(A)(ii)] it seems clear that the location of the documents was with GEO.

[2]  Although it wasn't required to, GEO informally produced -- within one business day of Plaintiff's informal request -- all of the non-proprietary documents it initially disclosed. (See Doc. 68-4) Plaintiff also argues that she did not receive the recordings until GEO supplemented its disclosures on June 22, 2015, but see Exhibit 8 and Appendix paragraph 1.7.

disclosure and the date Plaintiff received the recordings was harmless or substantially justified. Thus, Defendant's conduct does not warrant any sanctions, much less those Plaintiff seeks.

2.2     Rule 26(a)(1)(A)(ii) provides in relevant part:

> [A] party must, without awaiting a discovery request, provide to the other parties ... a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Rule 37, provides that "[i]f a party fails to provide information ... as required by Rule 26(a) ..., the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

2.3     In evaluating whether a violation of Rule 26 is harmless, and thus whether to exclude evidence from use at trial, the Court looks to four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A & M Res'ch Found. v. Magna Transp., Inc.,* 338 F.3d 394, 402 (5th Cir. 2003).

2.4     As set forth below, Defendant was not required to disclose the telephone recordings because it intended to use them solely for impeachment during Plaintiff's deposition. (*See* paras. 3.1-3.5, below)  Nonetheless, even if the recordings should have been disclosed 10 days sooner than they actually were, the failure to disclose them was harmless or substantially justified.

### *(1) The importance of the evidence*

2.5     The recordings are important.  Plaintiff contends they are substantively important because they confirm Plaintiff consented to sex with Valladarez.  Defendant contends their importance lies in how they destroy Plaintiff's credibility.  However, that's a disagreement about whether the

recordings needed to be disclosed in the first place,[3] which, for purposes of evaluating the *Texas A&M* factors, is presumed. But regardless why the recordings are important, there is no doubt they are so important that excluding them from evidence would disserve the interests of justice by depriving the jury of crucial information it is entitled to have in determining the outcome of this case.

### *(2) The prejudice to the opposing party of including the evidence*

2.6 Plaintiff will not be prejudiced if the recordings are allowed in evidence. She argues disclosure of the recordings would have avoided her impeachment at deposition, avoided or changed the hours of preparation for her deposition, and could have allowed her attorneys to prepare her to answer questions about what she said in the recordings. However, Plaintiff was in the best position to avoid all of these things through candid discussions with her lawyers.[4] Indeed, what Plaintiff is really arguing is that she should have had a heads-up so that her counsel could coach her to give testimony to fit the facts known to her adversary: "there are facile witnesses whose interest in 'knowing the truth before trial' is prompted primarily by a desire to find the most plausible way to defeat the truth." *Margeson v. Boston & M.R.R.*, 16 F.R.D. 200, 201 (D.Mass. Sept. 13, 1954), *see* C.A. Wright, A.R. Miller & R.L. Marcus, FED. PRAC. & PROC. CIV. § 2015 (3d ed. 2014) (hereinafter Wright & Miller). The prejudice here belongs to the Defendants and the hours they spent defending against Plaintff's claims.

2.7 Plaintiff's situation resembles the plaintiff's in *Lucas v. City of Shelby*, 246 F.Supp.2d 516, 524 (N.D.Miss. 2002). In *Lucas,* the plaintiff was impeached during cross examination at trial by introduction of a previously-undisclosed statement she made in a letter. The court

---

[3] See discussion, paragraphs 3.1 - 3.5, herein.

[4] Plaintiff was clearly aware of the captured conversations [See Exhibit 9, and para. 2.7, below], but she apparently failed to tell her counsel about them.

determined the plaintiff could "not claim that she was unaware of the letter she wrote, and as such, she can not claim any real prejudice from being unable to review it" before trial. *Lucas*, 246 F.Supp.2d at 524; *see also EEOC v. Mazzanti*, 2009 WL 927426 *3 (N.D.Miss. Apr. 2, 2009) (Plaintiff was not prejudiced or surprised by late and incomplete designation of witnesses because plaintiff knew the witnesses and the information they possessed). Like the *Lucas* plaintiff, Plaintiff was not surprised or harmed by the phone recordings' content because *she made the statements*.[5] Her deposition testimony confirms she remembered the calls before counsel played them at her deposition. (Exhibit 9) She was not surprised by her statements, only that Defendant knew about them.

2.8 Nor can Plaintiff claim surprise or prejudice by the timing of the disclosure. GEO disclosed the recordings 10 days after the initial disclosure deadline, more than three months before the close of discovery, and over eight months before trial. Opinions addressing late production generally find no surprise or harm so long as the production is made well in advance of trial.[6] *See e.g., Baker v. Canadian National/Illinois Central Railroad*, 536 F.3d 357 (5th Cir. 2008) (No harm admitting surveillance video produced *after* discovery completion deadline, but 9-10 months before trial); *Texas A&M,* 338 F.2d 394 (Evidence produced *post-trial* was not harmful because opponent had one month to examine and respond to it). This is not a case like those in which courts determined the production came so late that it should be excluded from use

---

[5] Note that Each and every call begins with a warning that the call could be monitored or recorded. (Exhibits 4, 5, 6)

[6] Almost all of the authorities analyze late production of impeachment materials in the context of Rule 33 or 34 discovery requests -- where the duty to produce impeachment materials is more established -- rather than Rule 26 disclosures. *See Karr v. Four Seasons Maritime, Ltd.*, 2004 WL 797728 * (E.D.La. April 12, 2004) (Noting that there is no impeachment exception for Rule 34 production like there is for Rule 26 disclosures when the party intends to use the materials for impeachment purposes). The Fifth Circuit has not addressed late disclosures under Rule 26. Few courts have.

at trial. *See e.g., Chaisson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (Surveillance not produced until trial); *Campbell v. Chet Morrison Contractors LLC*, 2012 WL 3028079 (W.D.La. July 24, 2012) (Surveillance video produced 1 month before trial by party that had denied it had any surveillance videos); *Bibolotti v. Am. Home Mortg. Servicing, Inc.*, 2013 WL 2147949 (E.D.Tex. May 15, 2013) (Production one month before close of discovery insufficient due to two major holidays). Here, Defendant did not hold the recordings and spring them at trial. It used them very early in the case, at the first possible opportunity.

2.9     Producing the recordings at the deposition netted Plaintiff the recordings more than three weeks sooner than disclosure would have. As reflected by her demand for the documents GEO disclosed, Plaintiff confuses Rule 26(a)(1)(A)(ii) disclosures with document production under Rule 34. (*See* Doc. 67-5) Unlike Rule 34, Rule 26(a)(1)(A)(ii)

> does not require production of any documents. … [A] disclosing party may prefer to provide copies of the documents rather than describe them, and the rule is written to afford this option to the disclosing party. If . . . only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests.

Fed. R. Civ. P. 26 advisory committee note (1993 amendments) (Note that the 1993 advisory note referred to former Rule 26(a)(1)(B), the substance of which now resides in 26(a)(1)(A)(ii)); *Hayes v. Frontera Produce, Ltd.*, 2013 WL 6174799 *1-2 (E.D.La. Nov. 20, 2013). Plaintiff's deposition occurred 10 days after the parties made their initial disclosures. So even if GEO's May 19 initial disclosure had listed Plaintiff's statements about the allegations in her complaint as a category of information in its possession, custody or control, and if Plaintiff had sought the statements through a request for production under Rule 34 prepared and served at the moment she received GEO's disclosures, GEO would not have been required to produce the recordings any sooner than June 22. Thus, failure to initially disclose the recordings did not harm Plaintiff.

*(3) The possibility of curing such prejudice by granting a continuance*

3.0     No continuance is necessary because there is no prejudice.  As discussed above, even if the 10-day delay in disclosure were prejudicial to Plaintiff, the recordings were disclosed well in advance of trial.  Defendants made the earliest possible use of the recordings.  The purposes of Rule 26 disclosures, and discovery in general, are to avoid trial surprises and enable parties to properly evaluate their cases.  Disclosure of the recordings at the Plaintiff's deposition accomplished these purposes and gave the parties ample time to adjust their strategy, expectations, trial preparations, and settlement positions.  Plaintiff had the entire discovery period to address the evidence and will proceed to trial fully aware of the recordings.

*(4) The explanation for the party's failure to disclose/Whether disclosure was required*

3.1     Defendant did not provide the recordings to Plaintiff in its initial disclosures because it intended to use them early in pre-trial discovery to impeach Plaintiff's credibility, and impeachment materials are exempt from disclosures.

3.2     Rule 26 required Defendant to disclose all documents in its control that it "may use to support its claims or defenses, *unless the use would be solely for impeachment*." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).  There is a noted dearth of legal authority regarding discovery, and especially disclosure, of impeachment materials.  Almost all of the cases involve the failure to produce impeachment material in response to a specific discovery request rather than in initial disclosures.

3.3     The recordings were impeachment evidence, which is understood in the Fifth Circuit to be evidence that is "offered to discredit a witness ... to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993).  Plaintiff

candidly concedes "[t]he recordings certainly could be used to undermine Ms. Olivarez's credibility" and constitute "*classic impeachment*." (67 p. 5) (emphasis added). And the recordings were, in fact and without dispute, effectively used at the deposition for the sole and specific purpose of destroying Plaintiff's credibility. Even the authorities cited in Plaintiff's motion for sanctions recognize that a party that intends to use documents solely to impeach its opponent's credibility may withhold them from disclosures. *Moore v. City of Chicago Hts.*, 2011 U.S.Dist. LEXIS 126738 at *39 (N.D.Ill. 2011) ("[T]he City would not have been required to identify the tapes in its initial disclosures if it intended only to use them for impeachment."); *see also Vinzant v. U.S.*, 2010 WL 2674609 (E.D.La. June 30, 2010) (Party's disclosure obligation is limited to information it intends to offer to support its claims or defenses); Wright & Miller § 2015. Because the recordings were impeachment evidence, Defendant was not required to disclose them.

3.4    Plaintiff argues, however, that the information in the recordings showed not only that she is a manipulative liar, but that her sex with Valladarez was consensual. Accordingly, she contends the recordings could be used to defeat the merits of her claims rather than solely for impeachment, and therefore they should have been disclosed under Rule 26(a)(1)(A)(ii). Plaintiff's argument fails for a number of reasons. As an initial note, Plaintiff filed a motion for partial summary judgment [Doc. 66] contemporaneously with her motion for sanctions in which she argues that consent cannot be contested in this case, as a matter of law.[7] Thus, her contention that the recordings are substantive and should have been disclosed is contrary to her arguments before this Court. Next, the only case cited in support of Plaintiff' hybrid-use argument does not support excluding the recordings. In *Moore*, the defendant produced dispatch

---

[7]    Of course, Defendants contest Plaintiff's argument.

tapes 10 months after the disclosure deadline, when the case was ripe for summary adjudication. The tapes arguably contained statements more helpful to the non-disclosing defendant than to the plaintiff. The court determined that the defendant could have used them to negate the plaintiff's claims. Thus, the court concluded that the defendant would not be allowed to use them substantively because it should have disclosed them under Rule 26(a)(1)(A)(ii). Nonetheless, the court explicitly stated that the defendant could still use the recordings for impeachment purposes. *Moore*, 2011 U.S.Dist. LEXIS 126738 * 38-39 (The court barred "the City from using at trial [the undisclosed] material on those tapes that it believes would be helpful to its defense, *other than for impeachment*") (emphases added). Third, Defendant simply did not reach the same conclusions about the recordings' substantive content that Plaintiff did. Defendant considered the statements to be clearly impeachment material. Defendant recognizes it is unlikely that a person who had experienced the treatment described in Plaintiff's complaint would say the things she said to her mother and Juan, but the recordings are silent about what happened between Valladarez and Plaintiff in the MCDC kitchen, why it happened, and whether or how she was injured. On the other hand, she rather clearly relates her motivations for having sex with Valladarez. When asked whether she told her mother and Juan the same things about her allegations that she had just testified about in the deposition, she testified that she told Juan she was forced to have sex, and told her mother only that something sexual happened with a guy.[8]

---

[8] Page 67:
Q: Do you recall the version that you told [your mother]?
A: I just told her that something happened and it was to do with sex with a guy.
Q: That's it, something happened?
A: Yeah
. . .
Page 70
Q: Okay. And what did you tell Juan?
A: I just told him what happened.
Q: Did you tell him the full story?
A: Yes, sir.

(Exhibit 9) That's not what she told them, so the recordings establish she lied under oath in her deposition. The recordings provide ample reason not to believe *anything* Plaintiff says, and that is what even Plaintiff describes as "classic impeachment."

3.5     In contrast to disclosures, it is relatively clear that impeachment evidence (regardless of substantive content) must be produced if requested in interrogatories or request for production. *See Baker*, 536 F.3d at 369; *Chaisson*, 988 F.2d at 518; *Campbell,* 2012 WL 3028079 at *5. But the majority of courts will delay production of impeachment evidence (including impeachment evidence that may support a claim or defense) to let the producing party lock-in the requestor's deposition testimony first. WRIGHT & MILLER § 2015 (noting the practice and wide adoption); *see* Cooper, *Work Product of the Rulemakers*, 53 Minn.L.Rev. 1269, 1318 (1969); *Walls v. Intern. Papre Co.*, 192 F.R.D 294 (D.Kan. 2000); *Snead v. American Export-Isbrandtsen Lines,* 59 F.R.D. 148 (E.D. Pa. 1973). Defendants had no reason to conclude impeachment material would be treated any differently under Rule 26(a), or that Rule 26 imposes a different production obligation than Rule 34, especially since Rule 26 does not require production at all. *See Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 104 (E.D.N.C. 1993) (Delaying Rule 26 disclosure of video tapes until after plaintiff's deposition to "discourage Plaintiff from altering his testimony in light of what the films or tapes reveal."). Thus, it was reasonable for Defendant to conclude that Rule 26(a)(1)(A)(ii) would not require disclosure before taking Plaintiff's deposition.

---

. . .
Page 71
A: I told [Juan] more than I told my mom.
Q: Okay. So what additional things did you tell Juan that you didn't tell your mom?
A: What had happened.
Q: Did you tell him about the—your arm, that he grabbed your arm – that Valladarez grabbed your arm?
A: I just told him he forced me to have sex.
Q: He forced you?
A: Yeah.

**Conclusion**

3.6     Defendants did not disclose the recordings because they intended to use them at the deposition solely as impeachment.  Even if the recordings had a substantive component and should have been initially disclosed, sanctions are inappropriate because the short delay was harmless or substantially justified.  Actual disclosure was made very early in the discovery process.  Most importantly, exclusion is inappropriate because it would allow Plaintiff's scheme to escape the light of day.  Who is trying to hide what here?  Would the Defendants, the Court, or the jury ever know the things Plaintiff said, in the absence of the recordings?  Her complaint and pre-impeachment deposition testimony confirm her intent to hide that information.  She should not gain by sanctions what she sought by deceit.

WHEREFORE, PREMISES CONSIDERED, GEO prays Plaintiff's motion for sanctions be denied, and that the recordings will be admissible without restriction at the time of trial.

Respectfully submitted,

FITZPATRICK & KOSANOVICH, P.C.
P.O. Box 831121
San Antonio, Texas 78283-1121

_____
Shawn Fitzpatrick
Texas Bar No: 00787474
(210) 408-6793/ (210) 408-6797
skf@fitzkoslaw.com
Attorney for Defendant, The GEO Group, Inc.

**CERTIFICATE OF SERVICE**

I certify that this instrument has been served on the following persons on August 10, 2015, *via* the court's electronic notice and filing system:

Blaine T. Mynatt
Damian L. Martínez
Edward Hernandez, III
Casey B. Fitch
HOLT MYNATT MARTÍNEZ P.C.
PO Box 2699
Las Cruces, NM  88004-2699

Tim Flocos
BRUKSTERN FLOCOS & ASSOCIATES, LLP
611 West 14th Street, Suite 200
Austin, Texas 78701

Denis Dennis
Kelly, Morgan, Dennis
 Corzine & Hansen, PC
4001 E. 42nd, Suite 200 (79762)
P.O. Box 1311
Odessa, Texas  79760

_____
SHAWN FITZPATRICK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LISA VELASQUEZ-OLIVAREZ, | § | |
| *Plaintiff* | § | |
| | § | |
| *v.* | § | 3:14-CV-436-FM |
| | § | |
| GEO GROUP, INC., WARDEN | § | |
| RAUL TREVINO, WARDEN | § | |
| BRENT BEMENT, LUIS | § | |
| VALLADAREZ, and OFFICER | § | |
| FABIOLA CARRIZALES, in their | § | |
| official and individual capacities, | § | |
| *Defendants* | § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS

On this day came on to be heard *Plaintiff's Motion and Supporting Memorandum for Sanctions* (Doc. 67) and Defendants' responses thereto and the Court, after reviewing the arguments and reviewing the evidence, finds that any failure to timely disclose the recorded telephone calls made by Plaintiff Lisa Valladarez is harmless and substantially justified. The recordings were actually provided to Plaintiff over eight months before trial, more than three months before the close of discovery, and only 10 days after the disclosure deadline.

It is, accordingly, ORDERED that Plaintiff's Motion for Sanctions is DENIED.

Signed on this the ___ day of August, 2015.

_____
THE HON. FRANK MONTALVO

13