**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **LISA VELASQUEZ OLIVAREZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-14-CV-00436-FM** |
| | § | |
| **THE GEO GROUP INC.,** | § | |
| **WARDEN RAUL TREVINO,** | § | |
| **WARDEN BRENT BEMENT,** | § | |
| **LUIS VALLADAREZ, and** | § | |
| **OFFICER FABIOLA CARRIZALES,** | § | |
| **in their official and individual** | § | |
| **capacities,** | § | |
| | § | |
| **Defendants.** | | |

<u>**ORDER SANCTIONING THE GEO GROUP, INC., COUNSEL FOR THE GEO GROUP,
INC., AND COUNSEL FOR LUIS VALLADAREZ**</u>

On this day, the court considered "Plaintiff's Motion and Supporting Memorandum for

Sanctions" ("Motion") [ECF No. 67], filed July 31, 2015 by Plaintiff Lisa Velasquez Olivarez

("Plaintiff"); "The GEO Group Inc.'s Response to Plaintiff's Motion for Sanctions" ("GEO's

Response") [ECF No. 74], filed August 10, 2015 by Defendant The GEO Group, Inc. ("GEO");

"Defendant Valladarez's Response to Plaintiff's Motion for Sanctions" ("Valladarez's

Response") [ECF No. 75], filed August 10, 2015 by Defendant Luis Valladarez ("Valladarez");

"Appendix to The GEO Group, Inc.'s Response to Plaintiff's Motion for Sanctions" ("GEO's

Appendix") [ECF No. 70], filed August 10, 2015; and "Plaintiff's Reply to Defendants'

Response and in Support of Her Motion for Sanctions" ("Reply") [ECF No. 79], filed August 18,

2015.

Plaintiff requests the court prohibit all defendants from any use of audio recordings that

were not timely disclosed as initial disclosures.[1]  Plaintiff further requests suppression of the portions of her deposition pertaining to the audio recordings and underlying phone calls.[2] Additionally, Plaintiff asks the court to order Defendants GEO and Valladarez (collectively, "Defendants")[3] to pay her reasonable attorney's fees and expenses related to preparing for and attending her deposition on May 29, 2015.[4]  Furthermore, Plaintiff requests that Defendants be sanctioned for failing to timely disclose other materials, as well as their failure to engage in meaningful settlement negotiations.[5]

As this Order was being finalized, Casey Fitch, one of Plaintiff's attorneys, called to inform the court that the parties had settled.  Due to this settlement, the relief requested in Plaintiff's Motion is moot.  However, sanctions addressing the willful abuse of the judicial process survive the parties' settlement.[6]  Thus, although the requested relief is moot, the court retains power to sanction parties or counsel who have willfully violated court rules or threatened the integrity of the judicial process.[7]  Accordingly, the court will fully address Plaintiff's Motion, even though the motion is **DENIED AS MOOT.**  Further, for the reasons discussed below, the

---

[1] Mot. 2–3.

[2] *Id.* at. 6.

[3] Although there are other defendants to this lawsuit, GEO and Valladarez are the subjects of Plaintiff's Motion.

[4] Mot. 3.

[5] *Id.* at 7–9; Reply 4–5.

[6] *See Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637 (5th Cir. 2008) (explaining that "a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of a case").

[7] *See id.* ("It is well established that a federal court may consider collateral issues after an action is no longer pending.")(internal quotation marks and citations omitted).

court sanctions GEO, counsel for GEO, and counsel for Valladarez.

I.    **BACKGROUND**

   *A.    Procedural History*

   On November 26, 2014, Plaintiff filed her "Complaint for Negligence, Negligence Per Se, Negligent Hiring, Training, Supervision and Retention, False Imprisonment, Assault, Violation of Constitutional Rights under 42 U.S.C. Section 1983, *Bivens* Claim, and Damages" ("Complaint").[8]  On March 17, 2015, the court entered its Scheduling Order.[9]  The Scheduling Order required the parties to make their initial disclosures under Rule 26(a)(1) by May 15, 2015.[10]

   On May 19, 2015, Defendants GEO, Warden Brett Bement ("Bement"), and Warden Raul Trevino ("Trevino"), served their initial disclosures on Plaintiff.[11]  With respect to disclosures under Rule 26(a)(1)(A)(ii), the category relevant to the Motion at issue, GEO listed the following in its initial disclosure:

> Documents related to Plaintiff's criminal history, convictions, and sentences
> OPR Referral, follow-up communications, and related personnel actions
> MCDC Kitchen Layout
> Inmate Handbook
> Sexual Abuse and Prevention policies and materials
> Offender Protection policies and materials
> The disclosing parties reserve the right to use all documents and information produced or obtained by any party in discovery, including but not limited to documents related to Plaintiff's earnings, healthcare, and institutional records even

---

[8] *See* ECF No. 1.

[9] *See* ECF No. 24.

[10] *Id.* at 1 ¶ 2.

[11] *See* Mot., Ex. A, "Initial Disclosure of Defendants Brett Bement, Raul Trevino, and The GEO Group, Inc.," ECF No. 67-1.

though not presently in these parties' possession, custody, or control.[12]
On May 20, 2015, Valladarez served his initial disclosures on Plaintiff.[13]  For disclosures under
Rule 26(a)(1)(A)(ii), Valladarez wrote:  "Defendant reserves the right to use all documents and
information produced or obtained by any party in discovery, including but not limited to
documents not presently in his possession, custody, or control."[14]

On May 29, 2015, GEO, Trevino, Bement, and Valladarez took Plaintiff's deposition.[15]
During the deposition, GEO's attorney, Shawn Fitzpatrick, asked Plaintiff if she had spoken with
others about what had happened to her on December 24th.[16]  Plaintiff responded that she had
spoken with her mother, but that she could not recall what day, and that she did not tell her
mother everything that happened.[17]  Plaintiff stated that she told her mother "something happened
and it was to do with sex with a guy."[18]  Mr. Fitzpatrick asked Plaintiff if she spoke with anyone
else, other than her attorneys, about what had happened.[19]  Plaintiff stated that she had spoken
with her friend Juan, but that she could not recall the date she had spoken with him, and that she
had told him the "full story," including that Valladarez "forced [her] to have sex."[20]

---

[12] *Id.* at 4.

[13] *See* Mot., Ex. B, "Initial Disclosures of Defendant Luis Valladarez," ECF No. 67-2.

[14] *Id.* at 2.

[15] GEO's App., Ex. 9, ECF No. 70-1.

[16] *Id.* at 65:2–4.

[17] *Id.* at 65:5–71:25.

[18] *Id.* at 67:7–8.

[19] *Id.* at 69:3–6.

[20] *Id.* at 69:12–13, 71:15.

Later during the deposition, Timothy Flocos, attorney for Valladarez, played three audio recordings.[21]  The audio recordings capture three fifteen-minute phone calls made by Plaintiff while she was incarcerated at the Maverick County Detention Center ("MCDC").  All phone calls begin with a recording that states:  "You have a prepaid call from Lisa, at the Maverick County Detention Facility.  This call may be monitored or recorded."  After the recording, the call recipient is able to accept or deny the phone call.[22]  The first recording is dated December 24, 2012, and is of a phone call from Plaintiff to her friend Juan Garza.[23]  In the recording, Plaintiff discusses having sexual intercourse with a guard that morning, and her tone and description of the intercourse suggest the encounter was consensual.[24]  The second recording, dated December 25, 2012, is of a phone call from Plaintiff to her mother.[25]  In that recording, Plaintiff discusses having sexual intercourse with a male in prison, also in a tone and manner suggesting the intercourse was consensual.[26]  The third recording, dated January 6, 2013, is of a phone call from Plaintiff to her friend Juan Garza.[27]  In that call, Plaintiff states that she has had intercourse with

---

[21] The court does not have the portions of the deposition transcript of when the audio recordings were played.  However, according to the table of contents of the deposition, the audio recordings were brought out on pages 128, 135, and 145, all of which were while Mr. Flocos was conducting his questioning.

[22] GEO's App., Exs. 4–6, ECF No. 70-1.

[23] GEO's App., Ex. 4.

[24] *Id.*

[25] GEO's App., Ex. 6.

[26] *Id.*

[27] GEO's App. Ex. 5.

the guard three additional times since the last time they spoke.[28]  The third recording mainly

captures Plaintiff asking Mr. Garza questions regarding what will happen if she reports her

sexual relationship with the guard.[29]  She is specifically focused on whether time will be added or

subtracted from her sentence if she reports.[30]  Plaintiff also tells Juan that the guard was "being

an asshole."[31]

      Neither GEO nor Valladarez's counsel disclosed these recordings by May 15, 2015, the

date initial disclosures were due, or anytime prior to Plaintiff's May 29, 2015 deposition.

However, GEO's counsel, Shawn Fitzpatrick, had these recordings in his possession by the

middle of February 2015.[32]

      *B.*     *Parties' Arguments*

          1.     <u>Audio Recordings</u>

      Plaintiff argues that Defendants' failure to timely disclose the audio recordings was a

violation of Rule 26(a).  Plaintiff contends the recordings were subject to initial disclosure

requirements under Rule 26(a)(1)(A)(ii) because they constitute "electronically stored

information . . . the disclosing party has in its possession, custody, or control and may use to

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *See* GEO's App., Ex. 3, Letter from the DOJ Regarding Return of Recordings, dated February 11, 2015, ECF No. 70-1.  Enclosed with this letter were discs containing digitally recorded audio calls made by Plaintiff while she was in federal custody, which GEO had provided to the Department of Justice during the prosecutions of Plaintiff and Valladarez.

support its claims or defenses, unless the use would be solely for impeachment."[33]  Plaintiff

contends Defendants failed to meet their disclosure obligations because they did not disclose they

had possession of the audio recordings, and the recordings were not solely for impeachment

purposes.[34]  Plaintiff does not dispute that the recordings have impeachment value, but argues

that the recordings also have a substantive purpose because they provide evidence to refute the

allegations in her lawsuit.[35]  Accordingly, Plaintiff asserts the recordings are not solely for

impeachment purposes and thus should have been disclosed as part of Defendants' initial

disclosures under Rule 26.[36]

Plaintiff further asserts Defendants should be sanctioned for their failure to disclose the

recordings because it was neither harmless nor substantially justified.[37]  Plaintiff argues the

failure to disclose was not harmless because, had Defendants provided the recordings in their

initial disclosures, the deposition may have been shortened and/or Plaintiff's counsel would have

prepared her for questions regarding the recordings.[38]  Plaintiff contends her deposition testimony

has now been contaminated by the surprise line of questioning, and this harm cannot be undone.[39]

Accordingly, the only proper remedy is to prohibit Defendants from using the recordings in any

---

[33] Mot. 3–4; *see also* Fed. R. Civ. P. 26(a)(1)(A)(ii).

[34] Mot. 4–5.

[35] *Id.* at 5.

[36] *Id.*

[37] *Id.* at 5–6.

[38] *Id.* at 6.

[39] *Id.*

subsequent proceeding, as well as prohibiting Defendants from using the portions of Plaintiff's

deposition regarding the recordings.[40]  Plaintiff also contends that Defendants should be ordered

to pay Plaintiff's costs and fees associated with preparing for and attending the May 29, 2015

deposition, as well as drafting the Motion.[41]

GEO avers the audio recordings were to be used solely for impeachment purposes, thus

exempting them from initial disclosure requirements under Rule 26(a)(1)(A)(ii).[42]  GEO argues

the recordings are impeachment material because Plaintiff's statements during her deposition

regarding what she said to her mother and Juan contradict what she actually said to them, as

shown by the recordings, thus calling Plaintiff's credibility into question.[43]  GEO asserts that the

recordings are not substantive evidence because "the recordings are silent about what happened

between Valladarez and Plaintiff in the MCDC kitchen, why it happened, and whether or how

she was injured."[44]  Accordingly, GEO claims that the recordings are "classic impeachment," and

thus did not need to be disclosed under Rule 26.[45]

GEO further asserts that even if the recordings should have been disclosed under Rule 26,

the late disclosure is harmless or substantially justified, and thus no sanctions are appropriate.[46]

---

[40] Mot. 6.

[41] *Id.* at 3, 10.

[42] GEO's Resp. 2 ¶ 2.1.

[43] *Id.* at 9–10 ¶ 3.4.

[44] *Id.* at 9 ¶ 3.4.

[45] *Id.* at 10 ¶ 3.4.

[46] *Id.* at 2–3 ¶ 2.1.

GEO avers that, under the Fifth Circuit's four-part test analyzing harmlessness for failure to disclose, the recordings should not be excluded.[47] First, GEO asserts the recordings are too important to be excluded from evidence.[48] Second, GEO argues Plaintiff will not be prejudiced if the recordings remain in evidence.[49] GEO contends that even if it had disclosed its possession of the audio recordings in its initial disclosures, it would not have been required to actually produce the recordings via a request for production any sooner than June 22nd, after Plaintiff was deposed.[50] Further, GEO avers that Plaintiff is not prejudiced because she was not surprised by the recordings since she was a participant in the phone calls, and each phone call begins with a warning that the call may be recorded.[51] GEO also argues Plaintiff is not prejudiced because the disclosure of the tapes was only made ten days after the initial disclosure deadline and over eight months before trial.[52] GEO contends courts typically find there is no surprise or harm in delays in discovery as long as the item is produced well before the trial date.[53] Third, GEO states a

---

[47] *Id.* at 3 ¶ 2.3. The Fifth Circuit considers four factors in determining whether a failure to disclose was harmless and thus it was permissible for the court to allow the evidence to be used at trial: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citation omitted).

[48] GEO's Resp. 3–4 ¶ 2.5.

[49] *Id.* at 4–6 ¶¶ 2.6–2.9.

[50] *Id.* at 6 ¶ 2.9.

[51] *Id.* at 4–5 ¶ 2.7 & n.5.

[52] *Id.* at 5–6 ¶ 2.8

[53] *Id.*

continuance is unnecessary as Plaintiff has not been prejudiced.[54]  Fourth, GEO asserts its reason

for not disclosing the recordings was that it believed the recordings were exempt from disclosure

because they are solely impeachment evidence.[55]

     Valladarez joins in GEO's Response.[56]  He adds that Rule 26 only requires disclosures

based on how the disclosing party intends to use the material.[57]  Valladarez contends the

recordings were solely impeachment evidence because consent is not a defense for a prisoner

claiming sexual assault by a correctional officer,[58] thereby indicating that Defendants did not

intend to use the recordings for their substantive value.

     In her Reply, Plaintiff asserts that both GEO and Valladarez have put consent at issue,

that consent is undoubtedly relevant to damages, and these recordings are clearly relevant to the

issue of consent.[59]  Accordingly, the recordings are substantive evidence that should have been

disclosed.[60]

       2.       <u>Additional Violations of Initial Disclosure Rules</u>

          a.     *Alleged Additional Violations by GEO*

     In addition to the audio recordings, Plaintiff asserts that GEO failed to comply with its

---

[54] Mot. 7 ¶ 3.0.

[55] *Id.* at 7–10 ¶¶ 3.1–3.5.

[56] Valladarez's Resp. 2 ¶ 2.1.

[57] *Id.* ¶¶ 3.1–3.3.

[58] *Id.* at 3 ¶ 3.5.

[59] Reply 3.

[60] Mot. 7–9; Reply 6.

initial disclosure obligations by not providing copies of documents or descriptions by category and location as required by Rule 26(a)(1)(A)(ii).[61]  On May 22, 2015, Plaintiff requested production of the documents in GEO's initial disclosures, and GEO's counsel provided them on May 26, 2015, a week after the initial disclosure deadline.[62]

GEO does not address these additional violations in its Response.  In her Reply, Plaintiff contends that GEO's failure to address the arguments in her Motion is a concession that it failed to disclose certain documents.[63]

### b.  *Alleged Additional Violations by Valladarez*

Plaintiff further asserts that Valladarez's initial disclosures were untimely because they were filed May 20, 2015, five days after the deadline.[64]  Plaintiff states that, in addition to being untimely, Valladarez did not comply with Rule 26(a)(1)(A)(ii) as he failed to identify or provide copies of any materials or documents or descriptions by category and location as required by the rule.[65]  Plaintiff contends that she sent a letter on May 22, 2015 requesting production of these documents, but that as of the filing of her Motion, Valladarez had failed to produce the materials or otherwise respond.[66]  Additionally, Plaintiff argues Valladarez's identification of witnesses in his initial disclosures is insufficient because it only contains the names of witnesses, and not the

---

[61] Mot. 2, 7–8.

[62] *Id.* at 7.

[63] Reply 4.

[64] Mot. 2.

[65] *Id.* at 8.

[66] *Id.*

subject matter about which each witness has information.[67]

Valladarez does not address Plaintiff's argument regarding disclosures other than the audio recordings. Valladarez does not provide an explanation for his failure to disclose the additional materials alleged by Plaintiff, but asserts that Plaintiff has since received all the required documents and materials from GEO.[68]

In her Reply, Plaintiff asserts Valladarez has separate disclosure requirements from GEO, and thus did not satisfy his obligations through GEO's disclosures.[69]

>           3.      Failure to Engage in Meaningful Settlement Negotiations

Plaintiff alleges that Defendants have not meaningfully engaged in settlement negotiations. Plaintiff states she mailed a settlement demand on May 6, 2015, a deadline agreed upon by all parties.[70] Plaintiff contends that the parties agreed Defendants would respond to the demand by May 22, 2015.[71] However, Plaintiff avers that GEO responded late, on May 25, 2015, saying it had "insufficient information" to accept the settlement offer, while Valladarez did not respond at all.[72] Plaintiff contends this is insufficient because it does not comply with the "spirit of the [c]ourt's [S]cheduling [O]rder" as the purpose of the requirement for settlement demand is to "facilitate a resolution of the matter at the earliest possible time or make clear to all involved

---

[67] *Id.* at 9.

[68] Valladarez's Resp. 3 ¶ 4.1.

[69] Reply 4.

[70] Mot. 2–3.

[71] *Id.*

[72] *Id.* at 3.

that a trial would be necessary."[73]

GEO did not respond to Plaintiff's allegations regarding the failure to engage in meaningful settlement negotiations.  Valladarez asserts Plaintiff's counsel is aware that Valladarez is incarcerated and without means to compensate a mediator, and thus was aware Valladarez was unable to meaningfully respond to a settlement demand.[74]

Plaintiff claims GEO has conceded its failure to engage in meaningful settlement by not responding to Plaintiff's allegations.[75]  Plaintiff also avers she had no reason to assume Valladarez was unable to settle the case because he was incarcerated, and, at a minimum, he should have communicated his inability to engage in settlement negotiations.[76]  Plaintiff requests that both GEO and Valladarez be sanctioned for their failure to engage in meaningful settlement negotiations as required by the Scheduling Order.[77]

## II.     APPLICABLE LAW

Rule 26(a)(1)(A)(ii) states:

[A] party must, without awaiting a discovery request, provide to the other parties: . . . a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.[78]

---

[73] *Id.* at 9.

[74] Valladarez's Resp. 3 ¶ 4.2.

[75] Reply 5.

[76] *Id.*

[77] *Id.*

[78] Fed. R. Civ. P. 26(1)(A)(ii).

13

Under Rule 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)   may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)   may inform the jury of the party's failure; and
>
> (C)   may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) – (vi)[79]

Under Rule 37(b)(2)(A)(I) – (vi), these orders include:

> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)   striking pleadings in whole or in part;
>
> (iv)   staying further proceedings until the order is obeyed;
>
> (v)    dismissing the action or proceeding in whole or in part; [and]
>
> (vi)   rendering a default judgment against the disobedient party.[80]

Local Rule CV - 7(j)(1) sets out certain requirements for claims for attorney's fees.  Claims must:

> include a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project, as well as an affidavit certifying (1) that the hours expended were actually expended on the topics stated, and (2) that the hours expended and rate claimed were reasonable.[81]

## III.   **DISCUSSION**

### A.     *The Audio Recordings are Not Solely Impeachment Material*

Substantive evidence "is that which is offered to establish the truth of a matter to be

---

[79] Fed. R. Civ. P. 37(c)(1).

[80] Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

[81] Local Rule CV-7(j)(1).

determined by the trier of fact," while impeachment evidence "is that which is offered to 'discredit a witness . . . to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony."[82] The exception from initial disclosure requirements under Rule 26(a)(1)(A)(ii) only applies when the materials are "*solely* for impeachment."[83] Where evidence has both impeachment value and substantive value, it must be disclosed.[84]

The audio recordings do not solely contain impeachment evidence, therefore Rule 26 required their disclosure. Defendants' arguments suggesting they did not view the audio recordings as substantive are frivolous. Plaintiff's case is centered on her allegations that she was forcefully raped multiple times by Valladarez. These recordings suggest some or all of the sexual encounters were consensual. Valladarez asserts consent as a defense in his answer.[85] GEO takes a similar position addressing Plaintiff's Motion for Partial Summary Judgment.[86] Valladarez's response to Plaintiff's Motion for Partial Summary Judgment also makes clear he

---

[82] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (quoting John P. Frank, *Pretrial Conferences and Discovery — Disclosure or Surprise?*, 1965 Ins. L.J. 661, 664 (1965)); *see also Sartin v. Wal-Mart Stores, Inc.*, 207 F.3d 658, at *2 (5th Cir. 2000) (per curiam) (unpublished table decision) (finding a videotape was substantive evidence because it was "probative as to actual harm to [the plaintiff] and the effect on her quality of life as the result of her slip and fall," while audio recordings were solely impeachment material because they "concerned the clarity of the witness's memory, not the specific events surrounding the accident").

[83] Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added); *see also Chiasson*, 988 F.2d at 517–18 (holding that a tape that had substantive value in addition to impeachment value should have been disclosed prior to trial).

[84] *Chiasson*, 988 F.2d at 517–18.

[85] "Answer of Defendant Luis Valladarez," at 4–7 ¶¶ 41–47, 49–53, 55–61, ECF No. 22, filed Feb. 18, 2015.

[86] GEO's Resp. 8 & n.7.

believes consent is a defense.[87]  Thus, there is no veracity to Defendants' assertions that they

believed consent could not be contested.

Moreover, the recordings may also support a defense to the claimed injuries of Plaintiff as

her detailed accounts to Mr. Garza make no mention of injury.  Accordingly, the recordings are

not solely impeachment material, and Defendants' counsel could not legitimately believe that

they were.  As such, the recordings should have been disclosed under Rule 26(a).

B.      *The Failure to Disclose the Recordings was Neither Harmless nor Justified.*

The Fifth Circuit has adopted four factors to determine whether a violation of Rule 26 is

harmless:  "(1) the importance of the evidence; (2) the prejudice to the opposing party of

including the evidence; (3) the possibility of curing such prejudice by granting a continuance;

and (4) the explanation for the party's failure to disclose."[88]

Evidence is important when it will have a significant role in the outcome of the case.[89]

Evidence is also important when the admission or exclusion of the evidence is likely to play a

---

[87] "Defendant Valladarez's Response to Plaintiff's Motion for Partial Summary Judgment," at 3–5 ¶¶ 4.1–4.6, ECF No. 77, filed Aug. 17, 2015 (distinguishing consent in 18 U.S.C. § 2243(b), to which Valladarez pled guilty, from consent in 42 U.S.C. § 1983, which is at issue in this case).

[88] *Tex. A&M Research Found.*, 338 F.3d at 402.  This analysis is typically conducting in determining whether it was appropriate for a court to impose a sanction of excluding undisclosed evidence.  *See, e.g., CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009) ("We consider four factors in determining whether the district court abused its discretion [in excluding the evidence pursuant to Rule 37].");  *Tex. A&M Research Found.*, 338 F.3d at 402 ("In evaluating whether a violation of [R]ule 26 is harmless, and thus whether the district court was within its discretion in allowing the evidence to be used at trial, we look to [the] four factors . . . .").  However, the court finds this four-factor test is also useful for determining whether sanctions other than excluding the undisclosed evidence may be appropriate.

[89] *See Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989) (per curiam) (finding the testimony of two expert witnesses was important because it "went to the central issues of the case," therefore its exclusion would "be a particularly strong remedy").

significant role in whether settlement is achieved.[90]  When evidence is important, the sanction of

its exclusion is more extreme, and accordingly only appropriate for severe misconduct.[91]

      The opposing party is prejudiced by the inclusion of the evidence when its late disclosure

significantly harms her case.  When a disclosure is untimely but still disclosed well before trial

and in a manner that provides the opposing party ample time to prepare, it is unlikely to be

prejudicial.[92]  However, the court must also consider other factors that may impact the opposing

party's ability to respond to the evidence that was untimely disclosed.  Accordingly, both the

timing of the disclosure and the opposing party's ability to respond factor into the prejudice

analysis.

      The explanation for the party's conduct is considered on a case-by-case basis; however, it

must at least be plausible to weigh in favor of the party who did not properly disclose evidence.[93]

However, a plausible explanation does not automatically weigh in favor of the party who failed

to disclose.[94]  Rather, the court must consider the party's explanation in light of the

---

[90] *See Chiasson*, 988 F.2d at 518 (observing that a disclosure that would have a significant effect on settlement was important).

[91] *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

[92] *Compare Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 368–69 (5th Cir. 2008) (holding that a surveillance tape that was disclosed via supplemental interrogatory after the discovery deadline but nine to ten months before trial was not prejudicial), *with Chiasson*, 988 F.2d at 517–18 (finding the admission of a surveillance video was prejudicial when it was not disclosed before it was used at trial).

[93] *See Pressey v. Patterson*, 898 F.2d 1018, 1022 (5th Cir. 1990) (finding the defendant's explanation that evidence had been destroyed when an employee was cleaning out his office, rather than intentionally destroyed to prevent its use as evidence, was plausible and thus a factor in favor of the defendant).

[94] *See Bradley*, 866 F.2d at 126–27 (finding budgetary and bureaucratic constraints in the United States Attorney's Office were not valid excuses for its failure to timely disclose expert witnesses under Rule 26).

circumstances.

With regard to the first factor, the recordings are undoubtedly important evidence. The recordings contain evidence that may impeach Plaintiff's credibility, and they provide evidence regarding the merits of Plaintiff's claim. The recordings have the potential to play a significant role in fact-finding and decision-making regarding merits and damages in this case.[95] Additionally, whether Defendants are allowed to use the recordings is likely to play a significant role in whether this case settles, another indicator of the recordings' importance.[96] Accordingly, total exclusion of the recordings would be an extreme sanction, and this factor weighs against full exclusion of the recordings.

Plaintiff was prejudiced at her deposition because she was unprepared for a line of questioning about the recordings, and that harm cannot be undone. Defendants attempt to analogize Plaintiff's circumstances regarding the late disclosure here to the harmless late disclosure in *Baker v. Canadian National/Illinois Central Railraod.*[97] However, the analogy is unpersuasive as the *Baker* disclosure occurred in the form of supplemental interrogatory responses, not questions during a deposition.[98] Furthermore, Defendants' assertion that Plaintiff cannot claim prejudice because she obviously knew what she said on her own phone calls is unconvincing.[99] Defendants reference *Lucas v. City of Shelby*, in which the court held that the

---

[95] *See id.* at 125 (finding testimony to be important where it played a "prominent role" in the district court's findings).

[96] *See Chiasson*, 988 F.2d at 518 (stating that a disclosure that would have a significant effect on settlement was important).

[97] GEO's Resp. 5 ¶ 2.8 (citing *Baker*, 536 F.3d at 357).

[98] 536 F.3d at 368–69.

[99] GEO's Resp. 5 ¶ 2.7.

plaintiff could not claim prejudice for a letter that was not disclosed when she had written the letter to the defendants.[100]  The situation here is distinguishable; although Plaintiff knew that she had made the phone calls, she had no way of knowing that the phone calls had actually been recorded,[101] nor that any such recordings still existed years after the phone calls were made, nor that Defendants had possession of the recordings.  Had Defendants disclosed the recordings, as required by Rule 26, Plaintiff's attorney could have assisted Plaintiff in preparing for questions about them.  As such, this factor weighs in favor of sanctioning Defendants.

The third factor, the possibility of a continuance curing the prejudice, is inapplicable in this case.  The prejudice has already occurred, and additional time will not remedy it.

Finally, Defendants have not provided a valid explanation for their conduct.  Defendants' sole explanation is that they believed the recordings were exempt from initial disclosure because they saw them solely as impeachment evidence.  As explained earlier, this argument is not plausible in light of Defendants' filings contesting the issue of consent,[102] and Plaintiff's account not referring to any injuries.  Accordingly, Defendants have not provided a satisfactory explanation for their decision to withhold the recordings from initial disclosure.  As such, this factor also weighs in favor of sanctioning Defendants for their conduct.

---

[100] 246 F. Supp. 2d 516, 524 (N.D. Miss. 2002); *see also* GEO's Resp. 4–5 ¶ 2.7.

[101] GEO points out that each call beings with a warning that the call may be monitored or recorded.  GEO's Resp. 5 ¶ 2.7 n.5.  However, that Plaintiff was aware that the call "may be monitored or recorded" did not make her aware that the calls were actually recorded.

[102] As an alternative explanation, Plaintiff asserts Defendants' counsel withheld the recordings from disclosure at the request of their clients.  If this impacted Defendants' decisions, it does not weigh in favor of Defendants' counsel, it is the responsibility of counsel to ensure clients comply with legal rules and procedures, even when clients wish to do otherwise. *See Heller v. City of Dall.*, 303 F.R.D. 466, 477 (N.D. Tex. 2014) (internal quotation marks and citations omitted) ("[E]ven if the client directs counsel to respond to discovery requests in a certain manner, counsel has the ultimate obligation to ensure that the responses and objections are well grounded in fact and law.").

The court finds that the untimely disclosure was neither harmless nor substantially justified. Accordingly, sanctions are appropriate in this case. Given the importance of the recordings and the amount of time before trial, the court does not find exclusion of the recordings to be the appropriate sanction. Rather, the court will use sanctions to "put the parties into the position" they would have been in "had [Defendants] complied with the rules."[103] In addition, the court will attempt to "ensure that [Defendants'] conduct does not go unpunished."[104]

C.     *The Court Sanctions GEO, Shawn Fitzpatrick, and Timothy Flocos for Willfully Violating Rule 26.*

Trial courts have great discretion in imposing sanctions.[105] The court's authority to sanction stems from rules and statutes, as well as the court's inherent authority to sanction.[106] Sanctions should be imposed as punishment on the wrongdoer and to ensure he is dissuaded from engaging in such behavior in the future.[107] However, courts have flexibility in determining what course of action will best assist in achieving these goals.[108] Although courts typically sanction using rules or statutes rather than their inherent power,[109] courts are not required to act under a

---

[103] *Bradley*, 866 F.2d at 127.

[104] *Id.* at 128.

[105] *See, e.g.*, *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976) ("The discretion of the district court to order sanctions under Rule 37(b)(2) is broad but not unlimited.").

[106] *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997). "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to reply on its inherent power to impose sanctions." *Id.*

[107] *Day v. Allstate Ins. Co*, 788 F.2d 1110, 1114 (5th Cir. 1986).

[108] *Pressey*, 898 F.2d at 1021.

[109] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

rule, if, in the court's discretion, the rules are not "up to the task."[110]  The court finds Defendants

engaged in willful abuse of the judicial process.  Thus, Rule 37 is insufficient to accomplish the

goals of punishment and dissuasion, and sanctions will be imposed under the court's inherent

authority in addition to Rule 37.

1.    <u>Sanctions Pursuant to Rule 37</u>

District courts have discretion to determine what sanctions are appropriate under Rule

37.[111]  Rule 37 sanctions serve a dual purpose:  "reimbursing the moving party and deterring the

violator."[112]  As such, although a court should endeavor to impose the least severe sanction

available,[113] it must impose sufficiently severe sanctions to ensure discovery is not abused.[114]  If

adequate sanctions are not imposed for discovery abuse, it would render discovery procedures

ineffective.[115]  Accordingly, "Rule 37 sanctions must be applied diligently both 'to penalize those

whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be

tempted to such conduct in absence of such a deterrent.'"[116]  It is generally within a judge's

---

[110] *Id.*

[111] *Pressey*, 898 F.2d at 1021 ("[T]he trial judge . . . has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct . . . .").

[112] *Day*, 788 F.2d at 1114.

[113] *See Pressey*, 898 F.2d at 1021 ("We also consider whether a less drastic remedy would be more tailored to the misconduct and therefore would better serve the purposes of Rule 37"); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) ("Despite this flagrant conduct, there is nevertheless an absence in the record of any consideration by the district court of whether a less drastic sanction would have equally furthered the important deterrent aspect of Rule 37.").

[114] *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970) (citation omitted).

[115] *Id.*

[116] *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (per curiam)).

21

discretion to impose the sanctions laid out in a rule, even if they seem harsh under the circumstances.[117]  There are some limitations, however, such as requiring "a finding of bad faith or willful misconduct" to impose the extreme sanctions of striking a pleading or dismissing a case under Rule 37(b).[118]  However, "when a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities," it is not an abuse of discretion to impose extreme sanctions.[119]

Rule 37(c)(1) states:  "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[120]  Defendants failed to comply with Rule 26(a)(1)(A)(ii) by failing to "provide to [Plaintiff]:  a copy — or a description by category and location — of . . . electronically stored information . . . that [they had] in [their] possession, custody, or control and may use to support [their] claims or defenses, unless the use would be solely for impeachment."[121]  Rule 37(c)(1)(A) also authorizes the court to "order payment of the reasonable expenses, including attorney's fees,

---

[117] *See Nat'l Hockey League*, 427 U.S. at 643 ("But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases. . ."); *O'Neill v. AGWI Lines*, 74 F.3d 93, 95–96 (5th Cir. 1996) (affirming the district court's sanctions of dismissing a case and payment of attorney's fees for failure to comply with an order under Rule 26, finding that although "[t]he sanctions imposed on [the plaintiff and his counsel] were severe, . . . we cannot say that the district court abused its discretion when it followed the plain language of Rule 37 . . . .").

[118] *Pressey*, 898 F.2d at 1021.

[119] *Emerick*, 539 F.2d at 1381.

[120] Fed. R. Civ. P. 37(c)(1).

[121] Fed. R. Civ. P. 26(a)(1)(A)(ii).

caused by the failure."[122]  Although excluding the recordings altogether might be permissible as it is a remedy provided for in Rule 37,[123] the court finds this remedy too severe as Plaintiff still has adequate time to prepare for trial fully aware of the recordings' existence.  Rather, the court will impose the least severe sanctions available that will fulfill the goals of Rule 37.  Accordingly, to ensure Defendants do not benefit from their failure to comply with Rule 26, Defendants are prohibited from using any portion of Plaintiff's deposition pertaining to the recordings or underlying telephone calls made by Plaintiff to Rachel Velasquez, on December 26, 2012, or to Juan Garza, on December 24, 2012 and January 5, 2013, in any future proceeding, including trial.

2.       Sanctions Pursuant to the Court's Inherent Power

In addition to authority under rules and statutes, the court has inherent authority to impose sanctions.[124]  Courts are limited to using their inherent power so that it is consistent with any applicable rules and statutes.[125]  In the Fifth Circuit, sanctions under the court's inherent power are limited to instances of bad faith or willful abuse of the judicial process.[126]

The court finds that Defendants' counsel engaged in the requisite willful abuse of the judicial process that is necessary to impose sanctions under its inherent power.  This was

---

[122] Fed. R. Civ. P. 37(c)(1)(A)

[123] *See id.*

[124] The court's inherent authority to sanction is not displaced by its power to sanction under rules and statutes.  *Chambers*, 501 U.S. at 46.  This inherent authority dates back to the Statute of Westminster in 1275.  Mary M. Devlin, *The Development of Lawyer Disciplinary Procedures in the United States*, 7 Geo. J. Legal Ethics 911, 912–16 (1994).  This power also has long historical origins in the United States.  *See id.* (discussing a court's use of its inherent power to discipline an attorney in *Ex parte Wall*, 107 U.S. 265 (1883)).

[125] *See Chambers*, 501 U.S. at 46–47.

[126] *Pressey*, 898 F.2d at 1021 (citations omitted).

calculated, premeditated, and informed conduct on the part of Defendants' counsel. While pleading consent as a defense to the lawsuit, Defendants' counsel withheld disclosure of items that support the defense of consent. They then used the items to surprise Plaintiff at her deposition. While not an offense of the greatest magnitude, it certainly constitutes willful abuse of the judicial process. The essential issue at bar is not Plaintiff's truthfulness during her deposition, rather it is Defendants' willful violation of Rule 26.

Accordingly, the court imposes sanctions on The GEO Group, Inc. in the amount of $5,000.00, on Shawn Fitzpatrick in the amount of $1000.00, and on Timothy Flocos in the amount of $1,000.00.

> D.    *The Court Refrains from Imposing Additional Sanctions*

>> 1.    Other Disclosure Violations

Plaintiff asserts that Defendants have failed to comply with other initial disclosure obligations aside from the recordings.[127] As Plaintiff concedes she has received all information from GEO, albeit some of it slightly delayed,[128] the court refrains from issuing further sanctions against GEO. As to Valladarez, it is unclear whether there is additional information subject to initial disclosure that Valladarez is obligated to provide to Plaintiff.[129] Accordingly, the court refrains from issuing sanctions at this time, but instructs Valladarez's counsel to immediately provide any remaining information subject to initial disclosure requirements to Plaintiff or otherwise inform Plaintiff that all information has been provided. Defendants are warned that

---

[127] Mot. 2, 7–8; Reply 4.

[128] Mot. 7.

[129] *Compare id.* at 8 (arguing Valladarez did not provide all documents required under Rule 26) *with* Valladarez's Resp. 3 ¶ 4.1 (explaining that Plaintiff has received all of Valladarez's availible information from GEO).

the court will not hesitate to issue additional sanctions if they continue to engage in discovery abuse.

      2.      <u>Settlement Negotiations</u>

Plaintiff asserts that Defendants failed to engage in meaningful settlement negotiations in May 2015.[130] As all parties participated in a mediation conference before the Honorable Robert Castaneda on September 2, 2015,[131] the court finds this issue is moot.[132]

## IV.   **CONCLUSION**

Because the parties have settled the case, all relief addressing the merits, including attorneys' fees for Plaintiff's counsel, are denied as moot.  However, sanctions for the willful abuse of the judicial process stand.  Accordingly, the court enters the following orders:

      1.      "Plaintiff's Motion and Supporting Memorandum for Sanctions" [ECF No. 67] is **DENIED AS MOOT.**

      2      Defendant The GEO Group, Inc. **SHALL** pay the Clerk of the Court $5,000.00 no later than November 19, 2015 as a fine for willful failure to comply with Rule 26 initial disclosure requirements.

      4.      Shawn Fitzpatrick **SHALL** pay the Clerk of Court $1,000.00 no later than November 19, 2015 as a fine for his willful failure to comply with Rule 26 initial disclosure requirements.

---

[130] Mot. 9; Reply 5.

[131] *See* "Mediation Report," ECF No. 93, entered Sept. 3, 2015.

[132] The court is aware Plaintiff has filed another motion for sanctions pertaining to this mediation. *See* "Plaintiff's Motion and Supporting Memorandum for Sanctions," ECF No. 94, filed Sept. 10, 2015.  That motion has been addressed separately.

5.      Timothy Flocos **SHALL** pay the Clerk of Court $1,000.00 no later than November 19, 2015 as a fine for his willful failure to comply with Rule 26 initial disclosure requirements.

**SO ORDERED.**

**SIGNED** this **20th** day of **October, 2015.**

FRANK MONTALVO
**UNITED STATES DISTRICT JUDGE**

26