IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LISA VELASQUEZ-OLIVAREZ, | § | |
|     *Plaintiff* | § | |
| | § | |
| *v.* | § | 3:14-CV-436 |
| | § | |
| GEO GROUP, INC., WARDEN RAUL | § | |
| TREVINO, WARDEN BRENT BEMENT, | § | |
| LUIS VALLADAREZ, and OFFICER | § | |
| FABIOLA CARRIZALES, in their official | § | |
| and individual capacities, | § | |
|     *Defendants* | § | |

**MOTION TO RECONSIDER SANCTIONS ORDER AND TO PRESENT EVIDENCE
AND ARGUMENT FOR THE FIRST TIME CONCERNING THE COURT'S
<u>APPLICATION OF INHERENT SANCTIONING POWER</u>**

TO THE HONORABLE FRANK MONTALVO:

1.    The Court sanctioned The GEO Group, its counsel (the undersigned), and counsel for Defendant Valladarez.  The Court considered sanctions under Rule 37 [ECF 110 p.21-23] but denied them as moot.[1] (ECF 110 p.2, 21)  The Court *sua sponte* determined the "Defendants engaged in willful abuse of the judicial process," and, therefore, it issued sanctions under the court's inherent authority. (ECF 110 p.21, 23-24)

2.    The undersigned respects the gravity placed on this matter by the Court.[2]  Nonetheless, GEO and its counsel ask that the sanctions order be reconsidered and withdrawn for the reasons herein.  Sanctions were imposed without adequate due process.  GEO did not make or otherwise

---

[1] The Court likely did not intend to sanction counsel under Rule 37, since that rule does not authorize sanctions against counsel for failure to make initial disclosures. *See Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1225-27 (10th Cir. 2015).

[2] "'Judges are prone to forget the sting of public criticism delivered from the bench ....'" *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 878 (5th Cir. 1988), *quoting* William W. Schwarzer, Sanctions Under the New Federal Rule - A Closer Look, 104 F.R.D. 181, 201 (1985).

cause the decisions the Court found offensive. The sanctions are not supported by clear and convincing evidence establishing that any sanctioned person acted in bad faith or knowingly or willfully abused the judicial process. Without clear and convincing evidence, the Court had no discretion to craft a sanction under its inherent authority.

**Due Process**

3.     "When a district court imposes sanctions under its inherent authority, due process considerations undoubtedly are implicated." *Hazeur v. Keller Indus.*, 983 F.2d 1061 (Table), 1993 WL 14973, *7 (5th Cir. 1993) (Unpublished). The Supreme Court instructed that such sanctions should not be imposed "without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper,*, 447 U.S. 752, 767 (1980). "[F]undamental fairness may require some measure of prior notice to an attorney that the conduct that he or she contemplates undertaking is subject to discipline or sanction by a court." *Hazeur,* 983 F.2d * 6, *citing Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 571 (3d Cir. 1985). Otherwise, the sanctioned persons lack an adequate opportunity to explain the conduct deemed deficient. *Id.*

4.     The Court did not apprise the sanctioned persons that it intended to exercise its inherent authority to sanction. It did not issue a show cause order seeking explanation. It held no hearing. Nothing known to the sanctioned persons would have alerted them to develop an adequate record demonstrating that their conduct was not in bad faith or an abuse of the judicial process but, rather, was guided by consideration of rule and authority and supported by an arguable legal basis in both. Accordingly, the Court did not afford adequate due process before exercising its inherent sanction authority.

**Inherent Authority -- The Record Does Not Support Sanctions**

5. Federal judges have inherent power to sanction, but they must be careful to exercise it "with restraint and discretion." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980). "[T]he threshold for the use of inherent power sanctions is high" [*Elliott v. Tilton,* 64 F.3d 213, 217 (5th Cir. 1995)] because the inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers v. NASCO*, 501 U.S. 32, 42 (1991). "A district court should only use its inherent powers when 'neither the statute nor the Rules are up to the task.'" *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1309 (Fed.Cir. 2009), *citing Chambers,* 501 U.S. at 50. An "inherent powers" sanction will be upheld only if "clear and convincing evidence supports the court's findings of bad faith or willful abuse of the judicial process." *In Re Moore*, 739 F.3d 724, 730 (5th Cir. 2014). Only then will the sanction order be reviewed under the more deferential abuse of discretion standard. *Id., Chambers*, 501 U.S. at 55.

6. There is no evidence GEO was involved in any decision discussed in the sanctions order. The evidence establishes GEO did not make the decision to withhold the recordings. It did not cause or direct the decision to be made. The decision was made by GEO's counsel. (Exhibit 1) The inherent authority sanction against GEO is not supported by clear and convincing evidence and must be withdrawn.

7. As for GEO's counsel, the gist of the Court's concern is that counsel withheld from initial disclosures information that could have been used to support GEO's claims or defenses, choosing instead to use the evidence at the Plaintiff's deposition to impeach her, without prior notice. The Court correctly determined the decision was intentional [ECF 110 p. 23-24] but erroneously concluded counsel acted in bad faith or willfully abused the judicial process.

8.  The error flows from the Court's conclusion that "where evidence has both impeachment value and substantive value, it must be disclosed." (ECF 110 p.15)  That would be a plausible application of the 1993 amendments to Rule 26, which required initial disclosure of "all documents … that are relevant to disputed facts alleged with particularity in the pleadings." Fed. R. Civ. P. 26(a)(1)(B), 1993 Amdt.  Most of the authorities available for review (including some the Court relied on) were developed under the 1993, or earlier, discovery principles.[4]

9.  However, the 2000 amendments changed the scope of initial disclosures -- most importantly by inserting the element of subjective intent concerning how or whether the disclosing party intended to use the information.  Under the current rule, "a party is no longer obligated to disclose witnesses or documents, *whether favorable or unfavorable, that it does not intend to use*." Fed.R.Civ.P. 26, advisory committee's note, 2000 amends. (emphasis added); *Vinzant v. U.S.*, 2010 WL 2674609 (E.D.La. June 30, 2010) (Party's disclosure obligation is limited to information it intends to offer to support its claims or defenses); 6 James Wm. Moore

---

[4]   The primary example is *Chiasson v. Zapata Gulf Marine Corp*., 988 F.2d 513 (5th Cir. 1993), on which the Court relied.  *Chiasson* dealt with a party's failure to identify videotape surveillance in response to an interrogatory.  The Fifth Circuit questioned whether the impeachment exception at issue, found in a local district court rule, could narrow the scope of discovery under Rule 26(b)(1).  The local rule allowed a party to submit, for *in camera* review, materials that were "to be used solely for impeachment" to determine whether they could be withheld from pre-trial exhibit designation.  The district court ruled the tapes were impeachment evidence and excluded them from pre-trial designation, but the Fifth Circuit determined they should not have been excluded because they were valuable both substantively and for impeachment.  But *Chiasson* did not address an initial disclosure rule, like Rule 26(a)(1)(A)(ii), that conditioned a party's initial disclosure obligation on how the disclosing party intended to use the information.  Accordingly, *Chiasson* and the authorities traceable to it are of limited value. *See also Texas A&M Rsch. Found. v. Magna Transp., Inc*., 338 F.3d 394, 402 (5th Cir. 2003) (1993 version of Rule 26(a)(1)(B)); *Sartin v. Wal-Mart*, 207 F.3d 658 (5th Cir. 2000) (The opinion does not address any discovery rules, but it pre-dates the 2000 amendments).

Other authorities cited in the sanction order did not address Rule 26(a)(1)(A)(ii) and the impeachment exception. *See e.g. CQ, Inc. v. TXU Mining Co., L.P*., 565 F.3d 268 (5th Cir. 2009) (Addressing undisclosed damage evidence under Rule 26(a)(1)(A)(iii), for which there is no impeachment exception).

*et al.,* Moore's Federal Practice § 26.22[4][a][ii] (3d ed. 2007) (Same). Thus, the rule, its comment, the case-law, and the secondary authorities uniformly recognize that the recordings in this case – no matter how helpful the recordings may have been to the parties' claims or defenses – could have been withheld *altogether*, provided the withholding party did not intend to use them to support its claims or defenses. And the rule is self-executing: if the litigant does not disclose the information, it cannot use it in support of its claims or defenses. See Fed. R. Civ. P. 37(c)(1), advisory committee's note to 1993 amends.

10. The 2000 amendments couple the intent element with an impeachment exception. But if impeachment materials did not also support a party's claims or defenses, there would be no need for Rule 26(a)(1)(A)(ii) to exclude them from initial disclosure because they would not have been subject to disclosure in the first place. Thus, when a party intends to use information only to impeach a witness, it may withhold the impeachment information despite the fact the party might have chosen to use the information to support its claims or defenses. Otherwise, the rule would swallow the exception. *See Halsbach v. Med-Data, Inc.*, 192 F.R.D. 641, 649-50 (D.Or. May 16, 2000) (Rule swallowing the exception: "It is rare where an attack on a witness's credibility cannot be linked to some substantive element of a claim."). The takeaway is that even if undisclosed evidence could serve the dual purposes of substance and impeachment, the offering party's intent determines whether it may be excluded from disclosure and offered as impeachment evidence. *Doyle v. New Jersey Rail Transport Operations, Inc.,* 2008 WL 4755735 *3 (D.N.J. October 29, 2008) (Rule 26(a)(1)(A)(ii) did not require disclosure of "dual purpose" surveillance if offered only for impeachment at trial); *Strayer v. Bare,* 2012 WL 2504902 *5-6 (M.D.Pa. June 28, 2012) (Undisclosed hard drive and stored documents on it were excluded for purpose of supporting claims or defenses but permitted for impeachment under Rule

26(a)(1)(A)(ii)); *Nehara v. California*, 2013 WL 1281618 *3-4 (E.D.Cal. March 26, 2013) (unpublished) (Undisclosed witnesses not excluded under Rule 26(a)(1)(A)(i) where party offered their testimony only for impeachment purposes).

11. Perhaps the best example of the proper application of the impeachment exception is *Ruddell v. Weakley County Sheriff's Dep't*, 2009 WL 7355801 *1-2 (W.D.Tenn. May 22, 2009). In that case, the defendant withheld from its initial disclosures nineteen tape-recordings of the plaintiff's telephone calls because it intended to use them for impeachment. The plaintiff argued the tapes "had a dual purpose because they [were] both substantive evidence and [could] be used for impeachment." *Id.* The court, however, admitted them for impeachment, commenting that the plaintiff's argument missed the point by failing to "recognize that the Rule 26 disclosures hinge on the disclosing party's intended use of the evidence." *Id.*

12. Exhibit 1 details the steps the undersigned took before deciding to withhold the recordings from initial disclosure. Even if the decision had been incorrect, the process alone establishes the decision was not made in bad faith or in willful abuse of the judicial process. Although not controlling authority, *Ruddell* is directly on point and supports counsel's decision to withhold. *Moore* is close, and *Strayer, Nehara* and *Doyle* are even closer. The same disclosure decision has been *made, accepted, and applied* in other courts. It should not constitute bad faith or abuse here.

13. The Court determined that "[t]he "Defendants' arguments suggesting they did not view the audio recordings as substantive are frivolous."[5] (ECF 110 p.15) The Court reasoned that the

---

5  Frivolousness is not the standard for sanctions for disclosure-related conduct or application of the court's inherent sanction authority. See Fed. R. Civ. P. 11(d). But even if it were, sanctions would be inappropriate because withholding the impeachment phone recordings had an arguable basis in law, as set forth herein. See Black's Law Dictionary 739 (9th Ed. 2009); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (Complaint is frivolous if it is based on an "*indisputably* meritless legal theory.); *Biliski v.*

defendants must have considered the recordings to be substantive evidence because they had raised the issue of consent, and the recordings showed the sex between the plaintiff and Defendant Valladarez was consensual. (ECF 110 p.15-16). Thus, the Court determined there was "no veracity to Defendants' assertions that they believed consent could not be contested."[6]

14. GEO's response to the plaintiff's motion for sanctions acknowledged the recordings had *some* substantive value.[7] But there was reason to question their substantive strength. (Exhibit 1) More importantly, whether the recordings had substantive value overlooks the dispositive point that counsel *intended to use* them for impeachment purposes only. (Exhibit 1) (*see* ECF 74 ¶3.1, 3.6)

15. The sanctions order states that the Defendants raised the issue of consent. As set forth above, Rule 26(a)(1)(A) would have allowed defendants to withhold the recordings if they chose not to offer them in support of their claims and defenses, even if they had raised consent. Nonetheless, and for rational reasons, consent was not raised by the undersigned. (Exhibit 1) Consent is not pleaded in GEO's answer. GEO's advisory concerning the Plaintiff's motion for partial summary judgment simply points out, correctly, that Defendant Valladarez's criminal conviction would not bar GEO from exercising its constitutional right to litigate any issue. (Exhibit 1) (ECF 76). Footnote 7 of GEO's response to the plaintiff's motion for sanctions notes

---

*Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (Frivolousness characterized by lack of an arguable basis in law and fact.); Fed. R. Civ. P. 11(b) ("[L]egal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.").

[6] This belief was expressed by the plaintiff, not GEO.

[7] "*Defendant recognizes it is unlikely that a person who had experienced the treatment described in Plaintiff's complaint would say the things she said to her mother and Juan*, but the recordings are silent about what happened between Valladarez and Plaintiff in the MCDC kitchen, why it happened, and whether or how she was injured." ECF 74 ¶3.4 (emphasis added); (Exhibit 1).

disagreement with the plaintiff's contention that consent could not, *as a matter of law*, be contested in a prison rape case. (ECF 74 p.8 n.7).

16. The sanctions order concludes Defendants' counsel "could not legitimately believe" the recordings were "solely impeachment material."[8] (ECF 110 p.16) However, the decision to withhold the recordings from initial disclosures was not made because of a belief that they *only* contained information relevant to impeachment. That was not GEO's position. The recordings were instead withheld because counsel *intended to use them* solely for impeachment, as stated in GEO's response to the plaintiff's motion for sanctions. (*see* ECF 74 ¶2.4, 2.5, 3.1, 3.6, and possibly 2.1) (Exhibit 1). Exhibit 1

17. The Court concluded that failure to disclose the recordings was not harmless or justified under the four *Texas A&M*[9] factors. (ECF 110 p.116) Analysis under the *Texas A&M* factors made sense only if the recordings had to be disclosed *vel non*. (*See* ECF 74 ¶2.1, 2.4, 2.5, 3.1-3.5) Initial disclosure was not required for the reasons addressed herein and in GEO's response to the plaintiff's motion for sanctions: i.e., there was no disclosure obligation because there was no intent to use the recordings to support GEO's claims or defenses. *Id.* Accordingly, there was no need to address the *Texas A&M* factors.

18. Even if analysis under the *Texas A&M* factors had been appropriate, nondisclosure was harmless and justified. The Court correctly recognized that the importance (first) factor favored

---

[8] Just as the defendants conceded the recordings had substantive value, the plaintiff and the Court both correspondingly acknowledge that the recordings also had information effective to impeach the plaintiff's testimony. (ECF 110 p. 15 ["The audio recordings do not *solely* contain impeachment evidence." (emphasis added)]; ECF 67 p.5 ["The audio files comfortably straddle the concepts of both substantive and impeachment evidence. The recordings certainly could be used to undermine Ms. Olivarez's credibility …."])

[9] *Texas A&M Research Found. V. Magna Transp., Inc.*, 338 F.3d 394 (5th Cir. 2003) (Analyzing the 1993 version of the initial disclosure rule).

the defendants and the continuance (third) factor was not relevant.[10] (ECF 110 p.18, 19) However, the Court erred when it determined that the defendants failed to offer a valid explanation (fourth factor) for nondisclosure and that the plaintiff suffered prejudice (second factor). (ECF 110 p.18-20)  The sanctions order mischaracterizes the proffered explanation.[11] The actual explanation was that the rules did not require initial disclosure *at all* because *the intended use* was solely for impeachment. (ECF 74 ¶ 3.1-3.5) (*See* Exhibit 1).

19. The prejudice (second factor) identified by the Court was that the plaintiff was "unprepared for a line of questioning about the recordings" in her deposition because nondisclosure deprived her attorneys the opportunity to assist her "in preparing for questions about them." (ECF 110 p.19)  It is difficult to conceive of any other reason why Rule 26(a)(1)(A) exempts impeachment materials than to preserve their impeachment value by discouraging such "preparation." (See ECF 74 ¶2.6 and authorities cited there)  Nonetheless, the way the recordings were used – early in the case, in deposition, many months before trial – balanced preserving the recordings' impeachment value against undue trial surprise in a way the undersigned believed was consistent with the general discouragement of gamesmanship incorporated in modern discovery practice. (Exhibit 1) (See ECF 110 p.18 [regarding importance to settlement value, etc.])

WHEREFORE, PREMISES CONSIDERED, GEO and its counsel respectfully pray the Court will (1) reconsider the sanctions order [ECF 110] in light of the argument, authorities and evidence presented herein and herewith, (2) reverse the sanctions, (3) withdraw the sanctions

---

[10] The continuance (third) factor may have been relevant as a component of the prejudice (second) factor. The impeachment use was made very early in the discovery process, so the plaintiff had more than 8 months to prepare for trial with full knowledge of the recordings.

[11] "Defendants' sole explanation is that they believed the recordings were exempt from initial disclosure because *they saw them* solely as impeachment evidence." (ECF 110 p.19) (emphasis added)

order, (4) direct the Court's Clerk to place under seal the sanctions order [ECF 110], this motion, supporting exhibits, and any order on this motion or related to the sanctions or withdrawn sanctions.

Respectfully submitted,

FITZPATRICK & KOSANOVICH, P.C.
P.O. Box 831121
San Antonio, Texas 78283-1121

_____
Shawn Fitzpatrick
Texas Bar No: 00787474
(210) 408-6793/ (210) 408-6797
skf@fitzkoslaw.com
Attorney for Defendant The GEO Group, Inc.

CERTIFICATE OF SERVICE

      I certify that this instrument has been served on the following persons on October 30, 2015, *via* the electronic filing and notification system of the United States District Court for the Western District of Texas:

Blaine Mynatt
Casey B. Fitch
HOLT MYNATT MARTÍNEZ P.C.
PO Box 2699
Las Cruces, NM  88004-2699
575-524-8812
Counsel for Plaintiff


Tim Flocos
BRUKSTERN FLOCOS & ASSOCIATES, LLP
611 West 14th Street, Suite 200
Austin, Texas 78701
512-467-6076
Counsel for Defendant Valladarez

Denis Dennis
Kelly, Morgan, Dennis
  Corzine & Hansen, PC
4001 E. 42nd, Suite 200 (79762)
P.O. Box 1311
Odessa, Texas  79760
432-367-7271
Counsel for Defendant Carrizales

                                  _____
                                  SHAWN FITZPATRICK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LISA VELASQUEZ-OLIVAREZ, | § | |
|     *Plaintiff* | § | |
| | § | |
| *v.* | § | 3:14-CV-436 |
| | § | |
| GEO GROUP, INC., WARDEN RAUL | § | |
| TREVINO, WARDEN BRENT BEMENT, | § | |
| LUIS VALLADAREZ, and OFFICER | § | |
| FABIOLA CARRIZALES, in their official | § | |
| and individual capacities, | § | |
|     *Defendants* | § | |

## ORDER WITHDRAWING SANCTIONS ORDER

On this day came on to be heard the *Motion to Reconsider Sanctions Order and to Present Evidence and Argument for the First Time Concerning the Court's Application of Inherent Sanctioning Power* filed by the GEO Group, Inc. and its counsel, and the Court, after careful consideration of the issues, evidence, and authorities, is of the opinion it should be granted. Accordingly, it is ORDERED that:

The *Motion to Reconsider Sanctions Order and to Present Evidence and Argument for the First Time Concerning the Court's Application of Inherent Sanctioning Power* is hereby GRANTED.

The *Order Sanctioning the GEO Group, Inc., Counsel for the GEO Group, Inc., and Counsel for Luis Valladarez* [ECF 110] is hereby WITHDRAWN.

The Court Clerk is hereby ordered to place the sanctions order [ECF 110], the *Motion to Reconsider* [ECF ___], supporting exhibits [ECF ___], this order [ECF ___], and any other motion or order concerning the sanctions and withdrawn sanctions [ECF ___] under seal.

Signed on this the ____ day of November, 2015.


_____
THE HONORABLE FRANK MONTALVO