IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LISA VELASQUEZ-OLIVAREZ, § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | | 3:14-CV-436 |
| § | | |
| GEO GROUP, INC., WARDEN RAUL § | | |
| TREVINO, WARDEN BRENT BEMENT, § | | |
| LUIS VALLADAREZ, and OFFICER § | | |
| FABIOLA CARRIZALES, in their official § | | |
| and individual capacities, § | | |
| *Defendants* § | | |

**Declaration of Shawn Fitzpatrick**

My name is Shawn Fitzpatrick. I represent the GEO Group, Inc. (GEO) in the above-referenced cause. On October 20, 2015, the Court exercised its inherent power to sanction me, GEO, and another attorney for not initially disclosing three recorded telephone calls. The three recordings concerned conversations related to incidents the Plaintiff complained about in the lawsuit. The Court concluded the recordings had both impeachment and substantive value and therefore should have been described in my client's Rule 26(a)(1)(A)(ii) initial disclosures.

Initial disclosures reflect trial counsel's strategy concerning how the case will be tried, what information counsel intends to use to support the client's claims or defenses, and for what purpose the various information would be offered. I prepared my client's initial disclosures. I made GEO aware that I would make the decision whether to disclose the recordings. I made the decision to use the recordings to impeach the plaintiff concerning their contents rather than disclose them for use to support my client's claims or defenses. My client, GEO, did not make that decision or did require or direct me to make it.

Plaintiff's Motion for Sanctions includes the following statement about a conversation that occurred a few minutes after the plaintiff's deposition concluded: "[D]efense counsel for GEO and Valladarez clarified that they had been in possession of the audio files for some time, but because of a client preference they had *chosen* not to provide copies or otherwise alert Ms. Olivarez of their existence." (emphasis original) [ECF 67 p. 4] The first part of this statement is true: after the deposition, I told the plaintiff's lawyer, Mr. Casey Fitch, that I had been in possession of the tapes before Plaintiff's deposition. I also told him I chose to withhold the recordings until I could use them to impeach his client. However, the part about client preference doesn't support the inference drawn by the Court. Regarding preference, I recall telling Mr. Fitch that my client wanted the recordings to be used at the earliest possible opportunity to facilitate an early, reasonable settlement before incurring substantial expenses

and that the recordings had not been disclosed earlier because I first needed to lock-in his client's testimony. I highlighted the Plaintiff's impending expert designation deadline as an example of an expense that might be avoided. I did not say GEO had a role in withholding the recordings. That representation would have been incorrect. Note: Mr. Fitch and I discussed the content of this paragraph on October 26, 2011, and he did not disagree with it.

The Court's sanction order states that the Defendants raised the issue of consent in this case. I did not raise consent on behalf of GEO. One reason I opted not to raise consent was that my client's policies and training materials stress there is no such thing as consensual sex between staff and inmates. Raising the issue could have exposed my client to contradiction at trial.

The sanction order indicates GEO's advisory – made in response to the plaintiff's motion for partial summary judgment – adopted the position that some or all of the sex was consensual. [ECF 110 p.15, see ECF 76] This is incorrect. The advisory simply points out, correctly, that Defendant Valladarez's criminal conviction would not collaterally estop GEO from exercising its constitutional right to litigate any issue in the case. Nor did GEO join issue on consent in footnote 7 of GEO's response to the plaintiff's motion for sanctions. [ECF 74 p.8, n. 7; see ECF 110 p.10] In footnote 7, I noted disagreement with the plaintiff's contention that consent could not, *as a matter of law*, be contested in a prison rape case. [74 p8 n7]

The recordings capture the plaintiff making comments about the incidents alleged in her complaint. Nothing the plaintiff says in the calls directly contradicts anything in her complaint. I was aware that the content of the calls, while shocking, was not necessarily inconsistent with the plaintiff's sexual assault claims. I anticipated, incorrectly in hindsight, that the plaintiff would retain experts in the field of psychology to provide testimony concerning why an assault victim might make such statements, both in substance and tone. Accordingly, I recognized using the recordings to directly negate the plaintiff's assault allegations might not be particularly effective.

On the other hand, since 1994 my practice has included defending corrections and police cases. In my experience, I am aware that juries sometimes favor sympathetic parties even when the facts and the law do not. However, I cannot recall ever trying a case in which the jury returned a verdict in favor of a litigant who, the evidence showed, was untruthful, deceptive or driven by dubious motives. In cases like this one, in which the jury would ultimately have to commit to one of two divergent versions of events presented by the only two persons who were present when the events occurred, I believe witness veracity is extremely important in obtaining a favorable jury verdict.

Based on my observations and experience litigating corrections cases, I decided the recordings should be used to impeach the plaintiff. I made a preliminary determination not to initially disclose the recordings because I would use them for impeachment only. I had listened to scores of the plaintiff's recorded telephone conversations. Aware of the things she discussed in the calls, I anticipated, correctly, that the plaintiff would both remember the three calls I intended to withhold and lie about them. I was fully aware that Rule 403 might pose a problem at the time of trial, and the recordings might be excluded from evidence even if they were offered solely for impeachment, although I believed a limiting

instruction would have been appropriate. Nonetheless, my intent was to use the recordings solely for impeachment, which I tentatively believed exempted them from initial disclosure.

Before finalizing my decision not to disclose the recordings, I reviewed authorities on the topic. Many were developed under archaic rule language and were of limited usefulness. My review was not exhaustive, but, as discussed below, it was far more than cursory.

I started by reviewing the language of Rule 26(a)(1)(A)(ii). The first (1993) version of the disclosure rule had created what I considered to be an "open file" obligation -- requiring initial disclosure of everything relevant to disputed facts (which is probably one reason why so many courts opted out of initial disclosures back then) without exception for impeachment materials. The amendments that became effective at the end of the year 2000 changed that. The amendment limited initial disclosures to materials the disclosing party may use to support its claims or defenses, "unless the use would be solely for impeachment." Clearly, materials (impeachment or substantive) that are not useful to support a party's claims or defenses are completely outside the scope of initial disclosure and wouldn't need to be excepted from initial disclosure. Therefore, any impeachment materials that fall within Rule 26(a)(1)(A)(ii)'s impeachment exclusion would necessarily also support a party's claims or defenses. Otherwise, the impeachment language is surplus fluff, and that can't be so, since every word and each phrase is presumed to have meaning. When I re-read the rule in anticipation of withholding the recordings from my client's initial disclosures in this case, I was comfortable that the rule's plain, unambiguous language excepted the recordings if I intended to use them for impeachment only, even if they would otherwise have been subject to initial disclosure if they had been offered to support my client's claim or defense.

I also reviewed excerpts from opinions and orders of courts within the Fifth Circuit concerning impeachment by extrinsic evidence on collateral matters. The point I drew was that impeachment evidence on collateral matters – i.e., impeachment evidence that *doesn't* support a party's claim or defense – would be outside the scope of initial disclosures anyway and wouldn't need to be excepted from disclosure. This information supported my conclusion that Rule 26(a)(1)(A)(ii)'s impeachment exception was aimed at impeachment evidence that is also useful to support a party's claim or defense.

Before finalizing my decision to withhold the recordings from disclosures, I reviewed the Committee Notes on Rules for the 2000 amendments to Rule 26. The Committee Notes explicitly say that a party has no obligation to disclose any information it does not intend to use to support its claims or defenses, regardless whether the information is favorable or unfavorable. I located support for this premise in several circuit courts and at least one district court in the Fifth Circuit (*Vinzant*). And if a party can avoid disclosing an item by choosing *not to use it at all*, it would be inconsistent not to allow the party to also decide *how* to use the information. I read the Committee Notes to conform initial disclosures to the rational notion that the decision to use or not use information, and the reasons a party might offer evidence, should be left to counsel as trial strategy decisions.

I searched online legal resources for authorities within the circuit foreclosing my decision to withhold. I found none. Before the May 19, 2015, disclosure deadline, counsel for Valladarez and I conferred about withholding the recordings. He discussed the fact pattern in *Ruddell*, an order from outside the circuit that I had not read, in which the district court upheld the decision and allowed withheld impeachment evidence under nearly identical conditions.

Before the disclosure deadline, I considered the issue of timing. Whereas my client preferred that I disclose the recordings as early as possible to facilitate settlement, I balanced that interest against my need to use the recordings to impeach the plaintiff, or at least prepare the groundwork for a future impeachment, before she heard their content. Impeachment would probably be ineffective if the plaintiff heard the recordings before testifying because she would likely alter her testimony. But disclosures weren't the only way the plaintiff could obtain the recordings. I had anticipated, incorrectly, that she would promptly serve written discovery asking for all of her prior statements. Anticipating her discovery request, I consulted Wright & Miller and confirmed that I would have to give her the recordings if she asked for them in discovery, since there is no impeachment exception under Rules 33 and 34. While browsing Wright & Miller, I was reminded that the majority of federal circuits allow delaying discovery responses to allow impeachment before the party/witness has the chance to adapt her testimony in light of her knowledge of the discovery materials. It is not clear to me why the same principle would not apply to disclosures, especially since Rule 26 completely exempts, rather than merely delays, the disclosure of impeachment material. Nonetheless, I began making efforts to moot the issue by taking the plaintiff's deposition before any discovery would be due.

I have read the sanctions order [ECF 110] and recognize there may be little hope of convincing this Court to adopt my interpretation of Rule 26. Nonetheless, I am optimistic that the Court will withdraw its sanction order after reviewing why I made the decision not to disclose. I made a reasoned – admittedly aggressive – decision concerning disclosures. But the decision was not made in flagrant disregard of the rules and authorities. My decision was not made in the absence of principles and legal authorities, but rather in their good faith application. If my decision was wrong under existing law, then the reasoning underlying my decision merits consideration for modifying or reversing the existing authorities. I did not abuse the judicial process by making a bad faith or willful decision to violate any rules or laws, or to abuse the judicial process.

I declare under penalty of perjury that the foregoing is true and correct. See 42 USC § 1746.

Executed on October 29, 2015.

_____
SHAWN FITZPATRICK