IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LISA VELASQUEZ OLIVAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-14-CV-00436-FM |
| | § | |
| THE GEO GROUP, INC., WARDEN | § | |
| RAUL TREVINO, WARDEN BRENT | § | |
| BEMENT, LUIS ARMANDO | § | |
| VALLADAREZ, and FABIOLA | § | |
| CARRIZALES, in their official and | § | |
| individual capacities, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING MOTIONS TO RECONSIDER SANCTIONS

On this day, the court considered the "Motion to Reconsider Sanctions Order and to Present Evidence and Argument for the First Time Concerning the Court's Application of Inherent Sanctioning Power" ("Fitzpatrick's Motion") [ECF No. 112], filed October 30, 2015 by Defendant The GEO Group, Inc. ("GEO") and Shawn Fitzpatrick ("Fitzpatrick"), GEO's counsel; "Counsel for Defendant Valladarez's Motion to Reconsider Sanctions Order" ("Flocos's Motion") [ECF No. 121], filed November 30, 2015 by Defendant Luis Valladarez's ("Valladarez") counsel, Tim Flocos ("Flocos");[1] and the movants' "Response to Invitation to Address the Applicability of Rule 26(g) to Matters Before the Court" ("Supplemental Brief") [ECF No. 126], filed December 28, 2015.[2]  No other counsel or party has filed any response to the motions, and no responses are necessary to fully evaluate them.

As GEO's sanctions have already been vacated,[3] the only remaining matter is whether sanctions

---

[1] As two nonparties (Fitzpatrick and Flocos) are contesting sanctions, they will be referred to collectively as "the movants."

[2] Although the Supplemental Brief was only filed by Fitzpatrick, Flocos was permitted to join the Supplemental Brief on January 7, 2016.  "Order Granting Motion for Leave to Join Response," ECF No. 128.

[3] "Order Regarding Motions to Reconsider Sanctions," at 3 ¶¶ 1–3, ECF No. 124, entered Dec. 15, 2015.

against Fitzpatrick and Flocos should be vacated.  After considering the motions, the Supplemental Brief, the transcript of the deposition at the center of the motions, recordings associated with the deposition, and applicable law, the motions are **DENIED**.

I.     BACKGROUND

During the events giving rise to this lawsuit, Plaintiff Lisa Velasquez Olivarez ("Olivarez") was incarcerated at the Maverick County Detention Center ("MCDC"), which was then operated by GEO.[4]  In December 2012, Olivarez was allegedly sexually assaulted at the MCDC by Defendant Luis Armando Valladarez ("Valladarez"), who was then a GEO employee.[5]  Valladarez allegedly repeated his assault on Plaintiff over the following two months.[6]  Olivarez asserted these incidents were highly traumatic, to the extent that she "began suffering from severe depression and anxiety."[7]  In advancing claims against GEO, Valladarez, and other defendants, Olivarez sought a variety of damages, such as "physical and emotional damages, including physical injury, pain and suffering, invasion of bodily integrity and severe psychological and emotional distress."[8]

During the same time frame as the alleged assaults, Olivarez made a series of calls to her mother and a friend using the MCDC's phone system.  Each of the phone calls began with a prerecorded message stating the call might be monitored and recorded.  True to the warning, GEO recorded and retained at least three of Olivarez's phone calls.[9]  In summary, the three calls suggest (but do not

---

[4] "Complaint for Negligence, Negligence Per Se, Negligent Hiring, Training, Supervision and Retention, False Imprisonment, Assault, Violation of Constitutional Rights Under 42 U.S.C. Section 1983, *Bivens* Claim, and Damages," at 1 ¶¶ 2–3, ECF No. 1, filed Nov. 26, 2014.

[5] *Id.* at 2, 6 ¶¶ 7, 37–45.

[6] *Id.* at 8 ¶ 55.

[7] *Id.* at 6–7 ¶¶ 45–46.

[8] *Id.* at 19 ¶¶ 133–34.

[9] Those three recordings are the only ones giving rise to Fitzpatrick's and Flocos's sanctions.

conclusively demonstrate) Olivarez was not traumatized by the incidents, and furthermore, Olivarez may have sought out Valladarez's sexual conduct.  As GEO knew of the recordings and intended to use them to support its claims and defenses, the recordings implicated the disclosure obligations of Federal Rule of Civil Procedure 26 ("Rule 26").[10]

GEO preferred to "disclose the recordings as early as possible to facilitate settlement."[11]  Even so, Fitzpatrick informed GEO he would decide whether and when to disclose the recordings.[12]  After researching the law on Rule 26 obligations, which involved conferring with Flocos on the issue and eventually providing the recordings to Flocos, Fitzpatrick decided to withhold the recordings from Rule 26 disclosures while planning to use them to impeach Olivarez.[13]  To accomplish his goal, and to avoid being required to provide the recordings in response to a potential future discovery request from Olivarez, Fitzpatrick scheduled Olivarez's deposition for May 29, 2015, "before any discovery would be due."[14]

On May 19, 2015, Fitzpatrick submitted GEO's initial disclosures to Olivarez.[15]  The following were listed as "documents, electronically stored information, and tangible things that [GEO] has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment":

> Documents related to [Olivarez]'s criminal history, convictions, and sentences
> OPR Referral, follow-up communications, and related personnel actions

---

[10] *See generally* Fed. R. Civ. P. 26.

[11] Fitzpatrick's Mot., "Corrected Declaration of Shawn Fitzpatrick" ("Fitzpatrick's Declaration"), at 4, ECF No. 112-2.

[12] *Id.* at 1.

[13] *See generally* Fitzpatrick's Decl.

[14] *Id.* at 4.

[15] *See* "Plaintiff's Motion and Supporting Memorandum for Sanctions," Ex. A, "Initial Disclosure of Defendants Brett Bement, Raul Trevino, and The GEO Group, Inc.," ECF No. 67-1, filed July 31, 2015.

MCDC Kitchen Layout
Inmate Handbook
Sexual Abuse and Prevention policies and materials
Offender Protection policies and materials
The disclosing parties reserve the right to use all documents and information produced or obtained by any party in discovery, including but not limited to documents related to [Olivarez]'s earnings, healthcare, and institutional records even though not presently in [GEO's] possession, custody, or control.[16]

Fitzpatrick's signature is on the fifth page of the disclosures.[17]

Flocos submitted Valladarez's initial disclosures the following day.[18]  In the section for listing items Valladarez intended to use, the disclosures simply provided a reservation of rights similar to the one provided by GEO.[19]  The disclosures' third page contains Flocos's signature.[20]

Olivarez's May 29th deposition began with Fitzpatrick's examination.[21]  Although Fitzpatrick alluded to the recorded conversations multiple times, he did not confront Olivarez with the recordings during his initial examination, nor did he indicate the calls were actually recorded.  Olivarez was then examined by Denis Dennis, counsel for Defendant Fabiola Carrizales, who did not discuss Olivarez's phone calls.  Next, Olivarez was examined by Flocos.  During Flocos's examination, he played each recording on multiple occasions and questioned Olivarez extensively about them.  The deposition concluded with short further examination from Fitzpatrick, who focused on one of the recordings.  Less than an hour after the deposition ended, Fitzpatrick provided Olivarez's counsel with an online link to the

---

[16] *Id.* at 4.

[17] *Id.* at 5.

[18] Pl.'s Mot. & Supp. Mem. Sanctions, Ex. B, "Initial Disclosures of Defendant Luis Valladarez," ECF No. 67-2.

[19] *Id.* at 2.

[20] *Id.* at 3.

[21] The following discussion is based on the transcript of Olivarez's deposition, filed by Fitzpatrick at ECF No. 116-1 on November 20, 2015.

recordings Flocos played.[22]

On July 31, 2015, Olivarez moved to impose sanctions on GEO, Fitzpatrick, and Flocos under Rule 26(a) and Federal Rule of Civil Procedure 37 ("Rule 37") due to their failures to timely disclose the recordings.[23]  While Olivarez's motion was being considered, the parties settled their case,[24] thereby mooting Plaintiff's sanctions requests.  However, sanctions were imposed on October 20, 2015 against GEO, Fitzpatrick, and Flocos due to their disclosure failures, pursuant to Rule 37 and the court's inherent authority.[25]  In addition to GEO and Valladarez being prohibited from using the affected deposition segments in any future proceeding under Rule 37,[26] GEO was penalized $5,000.00, while Fitzpatrick and Flocos were each penalized $1,000.00 pursuant to the court's inherent authority.[27]  After GEO, Fitzpatrick, and Flocos disputed their inherent authority sanctions, GEO's inherent authority sanctions were vacated, while Fitzpatrick and Flocos were permitted to address whether Federal Rule of Civil Procedure 26(g) ("Rule 26(g)") supports their sanctions.[28]  The Supplemental Brief presents the movants' arguments on this issue.[29]

---

[22] "Appendix to The GEO Group, Inc.'s Response to Plaintiff's Motion for Sanctions," at 24, ECF No. 70, filed Aug. 10, 2015.

[23] *See generally* Pl.'s Mot. & Supp. Mem. Sanctions.

[24] *See* "Order Denying Motion for Partial Summary Judgment as Moot," at 1, ECF No. 108, entered Oct. 19, 2015 (observing Plaintiff's counsel informed the court the parties had reached a settlement).

[25] "Order Sanctioning The GEO Group, Inc., Counsel for The GEO Group, Inc., and Counsel for Luis Valladarez" ("Sanctions Order"), at 23–26, ECF No. 110.

[26] The court construes the motions as not challenging the exclusionary sanction.  Furthermore, in light of the following analysis, it was appropriate to exclude use of the affected deposition segments in future proceedings.

[27] *Id.*

[28] Order Regarding Mots. Recons. Sanctions 3.  Although Olivarez had requested sanctions pursuant to Rule 26, Rule 26(g) was not discussed in her motion.  *See generally* Pl.'s Mot. & Supp. Mem. Sanctions.

[29] *See generally* Supplemental Br.

II.     **APPLICABLE LAW**

As the motions seek to vacate sanctions, they might come under the purview of Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"), which governs motions for relief from a judgment or order.[30] "Since Rule 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."[31]  However, neither Fitzpatrick nor Flocos should be held to the elevated standards of Rule 60(b).

The movants contend they were not given an adequate opportunity to contest inherent authority sanctions before the sanctions were assessed.[32]  Even though the movants were on notice that Olivarez was requesting sanctions under Rules 26(a) and 37, and the movants utilized their opportunities to contest those requests, the movants assert this did not provide adequate notice of inherent authority sanctions.[33]

After due consideration, the movants' arguments about procedural adequacy have some merit. However, these arguments do not undermine whether sanctions are appropriate, but whether they were ordered prematurely.  Assuming it was premature to order inherent authority sanctions on October 20th, sanctions nevertheless should be maintained if the facts and law warrant them.  Nevertheless, the movants should not be compelled to simultaneously dispute the appropriateness of sanctions and the propriety of Rule 60(b) relief.  Rather, evaluating the motions will depend on answering one question for each movant:  Regardless of whether inherent authority sanctions could properly be assessed on October 20th, are sanctions appropriate *now* pursuant to Rule 26(g)?

Under Rule 26(g), "[e]very disclosure under Rule 26(a)(1) . . . must be signed by at least one

---

[30] *See generally* Fed. R. Civ. P. 60(b).

[31] *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

[32] Fitzpatrick's Mot. 2 ¶ 4; Flocos's Mot. 5–6 ¶¶ 36–38.

[33] Fitzpatrick's Mot. 2 ¶ 4; Flocos's Mot. 6 ¶ 38.

attorney of record in the attorney's own name . . . .  By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct as of the time it is made . . . ."[34]  The reasonable inquiry requirement "is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances."[35]  "If a certification violates [Rule 26(g)] without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."[36]

## III.   **ANALYSIS**

The motions both depend on the scope of obligations under Rule 26(a)(1).  Therefore, it is necessary to analyze disclosure obligations with regard to the recordings under Rule 26(a)(1).

### A.   *The Scope of Disclosure Obligations Under Rule 26(a)(1)*

The relevant provision is Rule 26(a)(1)(A)(ii), which reads as follows:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties . . . a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.[37]

As the recordings are undoubtedly "electronically stored information" and were intended to be used by GEO and Valladarez, they are encompassed by Rule 26(a)(1)(A)(ii).  Consequently, this dispute turns on the applicability of Rule 26(a)(1)(A)(ii)'s "unless" clause (the "impeachment exception").

This issue is complicated by the nature of the recordings.  Not only could the recordings be used

---

[34] Fed. R. Civ. P. 26(g)(1).

[35] Fed. R. Civ. P. 26 (1983 advisory committee note).  This standard is an objective one.  *Id.*

[36] Fed. R. Civ. P. 26(g)(3).

[37] Fed. R. Civ. P. 26(a)(1)(A)(ii).  It is undisputed that the recordings are not exempted by Rule 26(a)(1)(B), and furthermore, no stipulations or orders modified any obligation to disclose the recordings.

to impeach Olivarez's testimony, but they also possess substantive value independent of Olivarez's testimony.  The Fifth Circuit clarified this substantive/impeachment distinction in *Chiasson v. Zapata Gulf Marine Corp.*[38]  The *Chiasson* court held "[s]ubstantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact."[39]  By contrast, "[i]mpeachment evidence . . . is that which is offered 'to discredit a witness . . . to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony.'"[40]  In the context of prior statements from a witness, the difference between substantive evidence and impeachment evidence is whether the trier of fact is expected to view the prior statements as true (substantive evidence), rather than merely different from later statements (impeachment evidence).

This distinction underlies a problem for evidence with intertwined substantive and impeachment value.  Clearly, Rule 26(a)(1)(A)(ii) requires a party to disclose evidence with substantive value when the party intends to use the evidence for substantive purposes.  But what about when a party intends to use substantive evidence solely for impeachment purposes?  With the impeachment exception, it might appear such evidence does not have to be disclosed.  But what if it is impossible (as is the case here) for a fact finder to ignore the evidence's substantive value even when it is proffered solely for impeachment purposes?  Although the Fifth Circuit has not directly addressed this issue in the context of Rule 26(a)(1)(A)(ii), *Chiasson* unambiguously resolved it in a similar context.

*Chiasson* dealt with a potential conflict between a federal rule and a district court's standing order.  Under the then-effective version of Rule 26(b)(1) (which governs discovery requests rather than

---

[38] 988 F.2d 513 (5th Cir. 1993).

[39] *Id.* at 517 (citing John P. Frank, *Pretrial Conferences and Discovery — Disclosure or Surprise?*, 1965 Ins. L.J. 661, 664 (1965)).

[40] *Id.* (quoting Frank, *supra*, at 664).

automatic disclosure), parties were permitted to discover a wide range of evidence "relevant to the subject matter involved in the [case]."[41]  This rule did not contain any exception for impeachment evidence.  However, a variation on the impeachment exception was contained in the district court's standing order.  Although the standing order required parties to list exhibits to be presented at trial, it also contained the following provision:  "[I]f a party considers he has good cause not to disclose exhibits to be used *solely for the purpose of impeachment,* he may ex parte request a conference with the Court and make his position known to the Court in camera."[42]  Through the interaction of these two rules, parties were required to produce evidence to other parties on request (pursuant to the earlier version of Rule 26(b)(1)), unless good cause existed and the evidence was to be used solely for impeachment (pursuant to the standing order).

The *Chiasson* court analyzed disputed evidence and found that it had both substantive and (potentially) impeachment value.[43]  However, although the standing order potentially exempted impeachment evidence from production, the Fifth Circuit held the evidence had to be produced irrespective of its intended use as it was "at the very least in part substantive."[44]  Accordingly, even if the Fifth Circuit has not expressly addressed Rule 26(a)(1)(A)(ii)'s impeachment exception, it should be applied exactly as the *Chiasson* court applied the standing order's version.  Even if a party intends to use evidence only for impeachment purposes, it must be disclosed if the evidence possesses substantive value.

Although this approach may reduce the value of the impeachment exception, it does preserve

---

[41] *Id.* at 515 (citing Fed. R. Civ. P. 26(b)(1) (effective Aug. 1, 1987 to Nov. 30, 1993)).

[42] *Id.* (citation omitted) (emphasis in original).

[43] *Id.* at 517–18; *but see id.* at 517 ("[W]e question whether the proffered videotape discredits [the plaintiff's] testimony at all.").

[44] *Id.* at 517–18.

Rule 26's objective to "accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information."[45]  Perhaps the best expression of this purpose was made by the First Circuit regarding pretrial disclosures (although it is equally applicable to automatic disclosure) in *Klonoski v. Mahlab*.[46]  In evaluating Rule 26(a)(3)'s impeachment exception (virtually identical to Rule 26(a)(1)'s version), the *Klonoski* court quoted Wright & Miller in support of requiring disclosure of evidence with both impeachment and substantive value:

> If a party plans to testify to one version of the facts, and the opponent has evidence supporting a different version of the facts, the opponent's evidence will tend to impeach the party by contradiction, but if discovery of this kind of evidence is not permitted the discovery rules might as well be repealed.[47]

The movants' contentions regarding alternative meanings of Rule 26(a)(1)(A)(ii)'s impeachment exception are not persuasive.  The movants aver the 1993 version of the disclosure requirement was essentially an open file disclosure obligation, in that it required a party to disclose all materials it possessed relevant to disputed facts, regardless of whether it intended to use them for any purpose.[48]  However, in 2000, Rule 26(a)(1)(A)(ii) was amended to trigger a party's disclosure obligations (subject to the impeachment exception) when the party intends to use materials to support its claims or defenses.[49]  Given this post-*Chiasson* change, the movants argue Rule 26(a)(1)(A)(ii)'s express language excepted the recordings from disclosure as they were solely intended for impeachment.[50]

---

[45] Fed. R. Civ. P. 26 (1993 advisory committee note); *see also Hayes v. Cha*, 338 F. Supp. 2d 470, 503 (D.N.J. 2004) (noting "[a]utomatic disclosure was adopted to end two evils that had threatened civil litigation: expensive and time-consuming pretrial discovery techniques and trial-by-ambush").

[46] 156 F.3d 255 (1st Cir. 1998).

[47] *Id.* at 270 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2015, at 212 (2d ed. 1994)).

[48] Fitzpatrick's Mot. 4 ¶ 8 (citing Fed. R. Civ. P. 26(a)(1)(B) (effective Dec. 1, 1993 to Nov. 30, 2000)).

[49] *Id.* ¶ 9 (citing Fed. R. Civ. P. 26(a)(1)(B) (effective Dec. 1, 2000)).

[50] *Id.* at 5 ¶ 10.

Although this argument does not contradict Rule 26(a)(1)(A)(ii)'s language, the argument does contradict *Chiasson*. The *Chiasson* court required disclosure of exhibits even though: (1) it did not dispute whether the nondiscloser solely intended to use the evidence for impeachment;[51] and (2) the district court's standing order expressly permitted nondisclosure of impeachment evidence.[52] Critically, the *Chiasson* court declined to rule on whether the district court's order was invalid as contradicting the then-effective version of Rule 26.[53] From this, it necessarily follows that Rule 26(a)(1)(A)(ii)'s impeachment exception, like the district court's version in *Chiasson*, does not apply when intended evidence has substantive value. Accordingly, the argument concerning Rule 26's amendment is unavailing.[54]

Alternatively, the movants attempt to distinguish *Chiasson* as a case "not concerning impeachment by prior inconsistent statement."[55] As Federal Rule of Evidence 613(a) ("Rule 613(a)") allows for prior statements (whether consistent or inconsistent) to be admitted into evidence before a witness is confronted with them, the movants contend the recordings similarly did not have to be produced under Rule 26(a)(1)(A)(ii).[56] This argument is unpersuasive. Rule 613(a) speaks of disclosing

---

[51] The *Chiasson* court was skeptical, however, that the evidence actually had impeachment value. *Chiasson*, 988 F.2d at 517.

[52] *Id.* at 517–18.

[53] *See id.* at 516 ("The [district court's] non-disclosure procedure . . . may well be inconsistent with the Federal Rules of Civil Procedure and precluded under Rule 83. As stated, because the tape is also relevant to substantive issues, and should have been disclosed on that basis, we need not reach this broader, and most troubling, issue.") (footnote omitted).

[54] The movants also collect cases where courts have applied the impeachment exception when evidence was solely intended for impeachment. *See, e.g.*, Fitzpatrick's Mot. 5–6 ¶¶ 10–11 (citations omitted). However, none of the collected cases were decided by the Fifth Circuit. As the Fifth Circuit's *Chiasson* opinion is binding, the collected cases do not warrant a different result.

[55] Flocos's Mot. 3 ¶ 15.

[56] *Id.* at 3–4 ¶¶ 18–28.

11

a statement's *contents*, rather than its existence.[57]  As the movants did not timely disclose the existence of any recordings, whether the movants complied with Rule 613(a) at Olivarez's deposition is irrelevant to whether they complied with Rule 26(a)(1)(A)(ii).[58]

While reasonable arguments can be made against the *Chiasson* rule, the fact remains that *Chiasson* is the law of this Circuit.  Accordingly, *Chiasson* required the recordings to be listed or provided in initial disclosures under Rule 26(a)(1)(A)(ii).[59]

        B.       *Did the Movants Commit Sanctionable Violations of Rule 26(g)?*

Having concluded Rule 26(a)(1)(A)(ii) requires disclosure of evidence with substantive value, the court must determine whether the movants engaged in sanctionable behavior under Rule 26(g).  By signing their clients' initial disclosures, Fitzpatrick and Flocos certified those disclosures were "complete and correct."[60]  As the initial disclosures did not include recorded phone calls despite their being encompassed by Rule 26(a)(1)(A)(ii), the movants are necessarily sanctionable under Rule 26(g) unless: (1) they satisfied the reasonable inquiry requirement; or (2) their actions were substantially justified.

The movants advance two arguments on this issue:  (1) their disclosure violations were harmless;

---

[57] *See* Fed. R. Evid. 613(a) ("When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness.  But the party must, on request, show it or disclose its contents to an adverse party's attorney.").

[58] At least one court has held discovery obligations under Rule 26 are not limited by the Federal Rules of Evidence.  *See Klonoski*, 156 F.3d at 271 ("The rules of evidence do not trump the discovery rules contained in the Federal Rules of Civil Procedure.").

[59] Other Circuits have reached similar conclusions.  *See, e.g.*, *Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1122 (7th Cir. 1999) ("The proposed Armour/MacDougall testimony was part of AM General's primary line of defense — that Wilson was selected for termination because of his poor relationships with AM General customers.  If Armour and MacDougall counselled Wilson on this very issue, they should have been named in AM General's Pretrial Disclosures [pursuant to Rule 26(a)(3) even though their testimony was solely intended for impeachment].").  *Klonoski*, 156 F.3d at 270 (1st Cir. 1998) ("The excerpts from the letters written by Mrs. Klonoski to her sister were at least in part substantive, and therefore they did not fall within the 'solely for impeachment' exception of [Rule] 26(a)(3)."); *see also Standley v. Edmonds–Leach*, 783 F.3d 1276, 1283 (D.C. Cir. 2015) (collecting cases and stating that "some courts have concluded that [Rule 26(a)'s] impeachment exception is limited to evidence that has no potential utility other than impeachment") (citations omitted).

[60] Fed. R. Civ. P. 26(g)(1)(A).

and (2) their investigations and/or conclusions resulting in nondisclosure were reasonable under the circumstances.

     1.    <u>Harmlessness</u>

In an earlier analysis of this issue, the four factors provided in *Texas A&M Research Foundation v. Magna Transportation, Inc.*[61] were utilized to determine whether the movants' actions were sanctionable for purposes of Rule 26(a) and Rule 37.[62]  Although it is unclear whether these factors apply to Rule 26(g) violations, the court will assume the *Texas A&M* factors are relevant to determining whether a Rule 26(g) violation was substantially justified.

Previously, it was determined that one *Texas A&M* factor disfavored sanctions (the importance of the evidence), one factor was neutral (the availability of a continuance), and two factors favored sanctions (the prejudice to Olivarez and the movants' explanation for their failure to disclose).[63] Consequently, sanctions were found to be appropriate against each movant.[64]  The movants seek reevaluation of the two factors previously found to favor sanctions.[65]

     *a.*    *Prejudice to Olivarez*

In deciding the prejudice factor favored sanctions, the Sanctions Order found Olivarez was

---

[61] 338 F.3d 394, 401–02 (5th Cir. 2003).

[62] Sanctions Order 16–20.

[63] *Id.* at 16–19.

[64] *Id.* at 20.

[65] There is some ambiguity regarding whether the harmlessness arguments, originally propounded in Fitzpatrick's Motion challenging inherent authority sanctions, are also being made against Rule 26(g) sanctions.  In the interest of fairness, the harmlessness arguments will be evaluated in light of Rule 26(g).  Despite the lack of any challenge to the two factors found to not favor sanctions, the court has reconsidered those two in the interest of fairness.  *See* Supplemental Br. 3–4 (asserting "the arguments, evidence, and authorities set forth in" Fitzpatrick's Motion in support of showing substantial justification).  After due consideration, the unchallenged factors do not play a determinative role in whether sanctions are appropriate here.

prejudiced "because she was unprepared for a line of questioning about the [undisclosed] recordings."[66] The movants agree Olivarez was unprepared, but argue this does not constitute prejudice.[67]  They contend the impeachment value of the recordings would have been lost if Olivarez had an opportunity to prepare to be questioned about them.[68]  In addition, they aver "the way the recordings were used . . . balanced preserving the recordings' impeachment value against undue trial surprise in a way . . . consistent with the general discouragement of gamesmanship incorporated in modern discovery practice."[69]

In large part, the recordings' impeachment value depended on Olivarez giving testimony inconsistent with the recordings' contents.  If Olivarez knew about the recordings' contents and their intended use in advance of her deposition, then she would have had the opportunity to adjust her testimony to fit the recordings (even if the adjusted testimony would be less true).  Accordingly, the court will assume without deciding that nondisclosure of the recordings, solely for purposes of eliciting inconsistent statements, would not give rise to unfair prejudice under Rule 26.

Under this assumption, Fitzpatrick's initial examination of Olivarez was proper.  Although Fitzpatrick indisputably utilized his knowledge of the recordings' contents to guide his questioning, there is no indication Olivarez's ability to testify truthfully was impaired by the nondisclosure.  Furthermore, as the recordings were not played in Fitzpatrick's initial examination, there is no indication Olivarez lacked an adequate opportunity to prepare her testimony on any subject Fitzpatrick initially questioned her about.  Therefore, Fitzpatrick's initial examination may not have prejudiced Plaintiff.

This is not true, however, about Flocos's examination and Fitzpatrick's second examination.

---

[66] Sanctions Order 18.

[67] Fitzpatrick's Mot. 9 ¶ 19.

[68] *Id.*

[69] *Id.*

14

These examinations both discussed and focused on the contents of the undisclosed recordings.  Even assuming the movants were entitled to elicit Olivarez's contradicting testimony, this does not justify confronting Olivarez with the recordings' contradictions moments after first revealing them.  Furthermore, given the sexual assault allegations at the heart of this case, the recordings' contradictions may not only be reconcilable with Olivarez's allegations, those contradictions may defy simple explanation.[70]  In this light, even assuming it was proper to create inconsistencies via Fitzpatrick's initial examination, it was especially improper to question Olivarez about the recordings without disclosing them and giving her an opportunity to prepare explanations for the inconsistencies.

Accordingly, even assuming Fitzpatrick properly conducted initial examination without disclosing the recordings, the use of the recordings during his and Flocos's subsequent examinations prejudiced Olivarez, thereby favoring sanctions.

### b.    Explanation for Nondisclosure

The movants' argument against the fourth *Texas A&M* factor reiterates their interpretation of Rule 26(a)(1)(A)(ii):  The recordings did not have to be disclosed as they were intended solely to impeach Olivarez.[71]  As has already been discussed, this argument is not consistent with Fifth Circuit law.  Under *Chiasson*, the recordings had to be disclosed in light of their substantive value.  Thus, this factor does favor sanctions.

### c.    Result

The movants have not presented any arguments indicating the *Texas A&M* factors actually disfavor sanctions.  After due consideration, although Olivarez's prejudice may have been marginally less than described in the Sanctions Order, this does not render sanctions inappropriate.  Accordingly, the

---

[70] *See* Fitzpatrick's Decl. 2 ("I anticipated . . . that [Olivarez] would retain experts in the field of psychology to provide testimony concerning why an assault victim might make such statements [as those on the recordings], both in substance and tone.").

[71] Fitzpatrick's Mot. 9 ¶ 18.

recordings' nondisclosure was not harmless, thus excluding one basis for defending against Rule 26(g) sanctions.

2.      Movants' Investigations and Conclusions

a.      *Fitzpatrick*

Fitzpatrick's Declaration attests to his efforts to determine whether he was obligated to disclose the recorded calls to Olivarez.[72]  Although the Declaration is not persuasive regarding whether *Chiasson* mandated disclosure, it does describe copious research to determine the scope of Fitzpatrick's disclosure obligations.  Standing alone, the scope of Fitzpatrick's research concerning disclosure obligations favors finding he conducted a reasonable inquiry.  However, the Declaration contains a crucial detail that makes Fitzpatrick's conclusions and conduct particularly troubling.

Fitzpatrick's Declaration states he consulted Wright & Miller for guidance on his discovery obligations.  Although the Declaration only states Fitzpatrick consulted Wright & Miller with regard to responses to discovery requests under Rules 33 and 34 (rather than automatic disclosure),[73] it is apparent he consulted it in association with Rule 26 and disclosure requirements.  The strongest sign of this is Fitzpatrick's multiple citations to section 2015 of Wright & Miller, titled "Matters Useful for Impeachment," in support of his opposition to Olivarez's requested sanctions.[74]

As section 2015's title implies, it discusses the extent to which a party's intended impeachment evidence is discoverable, whether through discovery requests or disclosure.[75]  On one hand, section 2015

---

[72] *See generally* Fitzpatrick's Decl.

[73] *See id.* at 4 ("I consulted Wright & Miller and confirmed that I would have to give [Olivarez] the recordings if she asked for them in discovery, since there is no impeachment exception under Rules 33 and 34.").

[74] "The GEO Group, Inc.'s Response to Plaintiff's Motion for Sanctions," at 4 ¶ 2.6, 8 ¶ 3.3, 10 ¶ 3.5, ECF No. 74, filed Aug. 10, 2015 (citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2015 (3d ed. 2010)).

[75] *See generally* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2015 (3d ed. 2010).

mentions Rule 26(a)(1)(A)(ii)'s impeachment exception (thereby lending support to Fitzpatrick's position).[76]  However, and critically, section 2015 also quotes and highlights *Chiasson* as a case looking beyond the intended use of evidence to determine whether evidence should have been discoverable.[77]  As discussed previously, a full reading of *Chiasson* would strongly indicate that Fitzpatrick's use of the recordings, even for impeachment, would violate his automatic disclosure obligations.

This is not the only way section 2015 weakens Fitzpatrick's conclusions.  Immediately after discussing *Chiasson*, section 2015 discusses a "better solution" regarding discovery of impeachment evidence to reduce the risk of perjury.  In short, the "better solution" is to allow for "discovery or pretrial revelation" of impeachment evidence only after the possessing party "ha[s] been given an opportunity — ordinarily by deposition — to commit the inquiring party to a final version of the events and claims related to the impeachment material."[78]

Olivarez's deposition went far beyond this framework.  Although Fitzpatrick's initial examination was consistent with the better solution (in that it prompted testimony contradicting the undisclosed recordings), it was followed by examinations from Flocos and Fitzpatrick that delved into the recordings' contents and associated contradictions.  Furthermore, as Olivarez did not have any time to prepare explanations for her potential contradictions, Fitzpatrick's and Flocos's later questioning was of reduced value in determining facts.  As one court has observed, if a witness is confronted with surprise evidence, "[e]ven a witness honestly attempting to recall events truthfully would be rattled by such a

---

[76] *Id.* at 296 & n.12.

[77] *See id.* at 307 (citing *Chiasson*, 988 F.2d at 517) (characterizing *Chiasson* as "holding that it was improper to permit defendant to use an undisclosed videotape of plaintiff at trial despite defendant's contention that the evidence was merely used for impeachment").  A different section of Wright & Miller, focusing more on Rule 26(a)(1)(A)(ii)'s impeachment exception, cites two district court decisions outside the Fifth Circuit reaching analogous conclusions.  8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2053, at 370–71 n.57 (3d ed. 2010 & Supp. 2015) (citing *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431 (D. Md. 2006)).

[78] *Id.* at 307–08 (quoting Edward H. Cooper, Work Product of the Rulesmakers, 53 Minn. L. Rev. 1269, 1318 (1969)).

display."[79]  Although Fitzpatrick contends the recordings' use mitigated the risk of "undue . . . surprise in a way [he] believed was consistent with the general discouragement of gamesmanship incorporated in modern discovery practice,"[80] this assertion is refuted by the unnecessary prejudice Fitzpatrick and Flocos caused at Olivarez's deposition by playing and discussing the undisclosed recordings.

Section 2015 contains one more important detail weakening the validity of Fitzpatrick's conclusions:  It cites to a number of cases that have implemented the "better solution" by limiting disclosure *before a deposition occurred*.[81]  In contrast to those cases, Fitzpatrick did not seek the court's permission for his nondisclosure until responding to Olivarez's sanctions requests (i.e., after Olivarez's deposition occurred).  This delay is especially striking as Fitzpatrick sought protective orders on three occasions following Olivarez's deposition, most notably seeking limits on an upcoming deposition of a GEO representative.[82]  Moreover, Fitzpatrick concedes he attempted to maneuver around potential discovery obligations by scheduling Olivarez's deposition for earlier than he would be required to fulfill discovery requests.[83]  The prior lack of candor, in spite of section 2015's cited examples of discovery disputes being adjudicated prior to depositions, further demonstrates how Fitzpatrick's conclusions (i.e.,

---

[79] *Mason v. T.K. Stanley, Inc.*, 229 F.R.D. 533, 536 (S.D. Miss. 2005).

[80] Fitzpatrick's Mot. 9 ¶ 19.

[81] 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2015, at 308–10 n.31 (3d ed. 2010 & Supp. 2015) (citing, e.g., *Parks v. NCL (Bah.) Ltd.*, 285 F.R.D. 674 (S.D. Fla. 2012); *Walls v. Int'l Paper Co.*, 192 F.R.D. 294 (D. Kan. 2000); *Ward v. CSX Transp., Inc.*, 161 F.R.D. 38 (E.D.N.C. 1995)).

[82] "The GEO Group, Inc.'s Unopposed[]Motion for Protective Order Concerning Information Released to GEO by the U.S. Department of Justice, Federal Bureau of Investigation," ECF No. 52, filed July 2, 2015; "The GEO Group, Inc.'s Motion for Protective Order," ECF No. 68, filed Aug. 4, 2015; "The GEO Group, Inc.'s Motion for Protective Order Limiting 30(b)(6) Deposition," ECF No. 101, filed Oct. 2, 2015; *see also* ECF No. 101, at 6 ¶ 12 (asserting Olivarez's notice of deposition "ma[de] it impossible for GEO to determine what [Olivarez] might ask, and correspondingly impossible to prepare a witness to testify about it").

[83] Fitzpatrick characterizes this as "moot[ing]" potential issues with discovery requests by taking Olivarez's deposition before responses to discovery requests would have been due.  Fitzpatrick's Decl. 4.  This description is not accurate.  As Fitzpatrick had not informed Olivarez's counsel that *any* recordings existed, and furthermore, there is no indication Olivarez's counsel was aware of any recordings prior to the deposition (partly due to Fitzpatrick's concealment), his tactic replaced a potential discovery response dispute with an actual disclosure dispute.

the recordings did not have to be either disclosed to Olivarez or protected by a court order before her deposition) were not reasonable.

After considering all the circumstances, the court finds a reasonable person with the scope of Fitzpatrick's information would have, at minimum, sought judicial permission to withhold the recordings from disclosure prior to Olivarez's deposition. As Fitzpatrick neither disclosed the recordings nor sought the court's permission for his tactic, he did not reach reasonable conclusions concerning his disclosure obligations. Therefore, he must be sanctioned under Rule 26(g).

*b.    Flocos*

In contrast to Fitzpatrick, Flocos has not provided information on how he investigated the scope of his disclosure obligations prior to Olivarez's May 29th deposition. Although Flocos has provided arguments why sanctions are inappropriate, whether under Rule 26(g) or another source, he has not described how or when he reached his conclusions. As Flocos was required to conduct a reasonable inquiry under Rule 26(g),[84] ambiguity regarding Flocos's investigation favors sanctions.

Even so, Fitzpatrick's Declaration contains two potential signs of a reasonable investigation by Flocos. One possibility is that, before May 19th, Flocos discussed "the fact pattern in *Ruddell*, an order from outside the [Fifth C]ircuit . . . , in which the district court . . . allowed withheld impeachment evidence under nearly identical conditions."[85] As similar as the facts of *Ruddell* are, Flocos's knowledge of the case is not sufficient to demonstrate a reasonable investigation as *Ruddell* is neither binding authority nor a reflection of Fifth Circuit law.

The second possible indicator of a reasonable investigation is Flocos's conferring with

---

[84] Fed. R. Civ. P. 26 (1983 advisory committee note).

[85] Fitzpatrick's Decl. 4. The statement apparently refers to *Ruddell v. Weakley County Sheriff's Department*, No. 1:07-CV-01159-JDB-EGB, 2009 WL 3757705 (W.D. Tenn. May 22, 2009).

Fitzpatrick about withholding the recordings prior to May 19th.[86]  Fitzpatrick's Declaration does not contain any details regarding what was reviewed between the movants, other than mentioning Flocos's discussion of *Ruddell*.  Furthermore, the movants have provided no information indicating it would be reasonable for Flocos to rely solely on Fitzpatrick's conclusions.  Therefore, the court finds Flocos's conferring with Fitzpatrick does not itself show Flocos engaged in a reasonable investigation.

As Flocos has failed to show he engaged in a reasonable investigation of disclosure obligations, the court finds he did not meet his Rule 26(g) violations, and furthermore, lacks substantial justification for his violation.  Accordingly, Flocos must be sanctioned under Rule 26(g).

   C.    *Amount of Sanctions*

Although the movants have advanced myriad arguments disputing whether they should be sanctioned, they have not averred the *amount* of sanctions was itself inappropriate.  Nevertheless, as sanctions have been reconsidered under Rule 26(g) rather than the court's inherent authority, the amount of sanctions should be reconsidered in light of their different source.

The kind of sanction to be imposed under Rule 26(g) "is a matter of judicial discretion to be exercised in light of the particular circumstances."[87]  Although the movants have already been prohibited from using the affected deposition segments under Rule 37, additional sanctions are necessary to deter the movants from future violations.  Furthermore, as Olivarez and her counsel have indicated they wish to conclude this litigation,[88] ordering Olivarez's counsel to rejoin the litigation and substantiate fees for sanctions purposes would not serve the interest of justice.[89]

---

[86] Fitzpatrick's Decl. 4.

[87] Fed. R. Civ. P. 26 (1983 advisory committee note).

[88] *See* "Stipulation of Dismissal with Prejudice," ECF No. 119, filed Nov. 30, 2015.

[89] Furthermore, Olivarez has not sought reconsideration of sanctions insofar as penalties were ordered to be paid to the court, rather than herself or her counsel.

After due consideration, sanctioning each movant $1,000.00 is authorized by Rule 26(g), and furthermore, will adequately deter the movants from future violations.  Accordingly, the amount of previously ordered sanctions should not be modified.

IV.   **CONCLUSION**

Fitzpatrick's Motion [ECF No. 112] and Flocos's Motion [ECF No. 121] are **DENIED**.

**SO ORDERED**.

**SIGNED** this **27th** day of **January**, **2016**.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

21